**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

―――――――――――――――――――――――

ABEL DURAN,
*On behalf of himself and all others similarly situated*,

      Plaintiff,

        **v.**

HENKEL OF AMERICA, INC. and
HENKEL CORPORATION,

      Defendants.

―――――――――――――――――――――――

**Case No.:**


**CLASS ACTION COMPLAINT**


**JURY TRIAL DEMANDED**

      Plaintiff ABEL DURAN, individually and on behalf of all other persons similarly situated, by and through his undersigned attorneys, pursuant to this Class Action Complaint against HENKEL OF AMERICA, INC. and HENKEL CORPORATION, alleges the following:

## NATURE OF THE ACTION

      1.     This is a consumer protection action arising out of deceptive and otherwise improper business practices that HENKEL OF AMERICA, INC. and HENKEL CORPORATION, (hereinafter "Defendants"), engage in with respect to the labeling of their Schwarzkopf got2b Ultra glued Invincible Styling Gel (herein the "Product" as shown in **EXHIBIT A**). The Product is

marketed extensively in the United States throughout numerous retail stores, salon parlors, and online.

2.     The Product is advertised and sold to mislead consumers into believing that the gel produces "no flakes," when it in fact does produce flakes. *See* **EXHIBIT B.** Consumers are misled as to the quality and qualities of the Product. Accordingly, the Product violates the New York State laws within the same scope as the Federal Food Drug & Cosmetic Act ("FDCA").

3.     Plaintiff and Class members viewed Defendants' misleading front label, and reasonably relied in substantial part on the representations that it did not produce flakes when used. Plaintiff and Class members were thereby deceived into purchasing a product inferior to the one that they had bargained for.

4.     Upon information and belief, Defendants continue to sell the misbranded Product.

5.     Plaintiff brings this proposed consumer class action on behalf of himself and all other purchasers, who from the applicable limitations period up to and including the present (the "Class Period"), purchased the Product for consumption and not for resale.

6.     During the Class Period, Defendants purposely manufactured, marketed and sold the mislabeled Product throughout the United States.

7.     Defendants have deceived Plaintiff and other consumers nationwide by misbranding their Product, inducing Plaintiff and Class members to reasonably rely on their misrepresentation, and purchase a Product they would not have purchased otherwise.

8.      Defendants have collected millions of dollars from the sale of their Product, which they would not have otherwise earned, through these unfair and deceptive practices. Plaintiff brings this action to stop Defendants' misleading practices.

9.     Plaintiff does not seek to contest or enforce any state law that has requirements beyond those required by federal laws or regulations.

10.     Defendants market the Product in a way that is deceptive to consumers under consumer protection laws of New York, the other 49 states, and the District of Columbia.

11.     Defendants violate statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent, unconscionable trade and business practices, and false advertising. These statutes are:

1) Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq.;*
2) Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.;*
3) Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.;*
4) Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.;*
5) California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.;*
6) Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.;*
7) Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.;*
8) Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*
9) District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.;*
10) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*
11) Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*
12) Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1*, et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*
13) Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*
14) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*
15) Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq.;*
16) Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.;*
17) Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*
18) Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat Ann §§ 365.020, *et seq.;*
19) Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § § 51:1401, *et seq.;*
20) Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*
21) Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.;*
22) Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;
23) Michigan Consumer Protection Act, § § 445.901, *et seq.;*

24) Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*
25) Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*
26) Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*
27) Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*
28) Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*
29) Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*
30) New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq. ;*
31) New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 *1, et seq.;*
32) New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 *1, et seq.;*
33) New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.;*
34) North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*
35) North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.;*
36) Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.;*
37) Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*
38) Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*
39) Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, *et seq.;*
40) Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.;*
41) South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.;*
42) South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 *1, et seq.;*
43) Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.;*
44) Texas Stat. Ann. §§ 17.41, *et seq.,* Texas Deceptive Trade Practices Act, *et seq.;*
45) Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.;*
46) Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*
47) Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, *et seq.;*
48) Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.;*
49) West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*
50) Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.;*
51) Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et seq.*

## **JURISDICTION AND VENUE**

12.     The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (a)(2)(A) because Plaintiff and Defendants are of diverse citizenship and the matter in controversy exceeds seventy-five thousand dollars ($75,000.00) exclusive of interest and costs.

13.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B) whereby: (i) the proposed class consists of over 100 class members, (ii) a member of the putative class is a citizen of a different state than Defendants, and (iii) the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs.

14.     The Court has personal jurisdiction over Defendants because the Product is advertised, marketed, distributed, and sold throughout New York State; Defendants engage in the wrongdoing alleged in this Complaint throughout the United States, including in New York State; Defendants are authorized to do business in New York State; and Defendants have sufficient minimum contacts with New York and/or otherwise has intentionally availed itself of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendants' activity within New York State is substantial and not isolated.

15.     At all relevant times hereto, Defendants are foreign corporations duly authorized to conduct business in the State of New York.  At all relevant times hereto, Defendants were a non-domiciliary of the State of New York and have committed a tortious act outside the State of New York, causing injury to a person within the State of New York that Defendants should reasonably have foreseen.

16.     Pursuant to 28 U.S.C. § 1391(b)(2), this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiff is a citizen of New York. He resides in this District and purchased the Product in this District. Moreover, Defendants manufactured, distributed, advertised, and sold the Product in this District.

## PARTIES

*Plaintiff*

17.    On November 21, 2018, ABEL DURAN, a resident of New York, purchased a 6 oz bottle of the Product at a CVS in Queens in reliance on label representations that the Product produced "no flakes." Plaintiff DURAN purchased his Product for the premium price of $7.99. The label promised that the Product produced "no flakes" when it in fact does.  PLAINTIFF DURAN was injured and was denied the benefit of his bargain. Plaintiff DURAN suffered economic harm in an amount up to the full amount of his purchase price because he was denied the benefit of his bargain and did not receive a product with the qualities he thought he was paying for. The gel Product was worth far less than what Plaintiff DURAN paid for it, as he paid a price commensurate with the value of a gel that does not produce undesirable flakes. Should Plaintiff DURAN encounter the Product in the future, he could not rely on the truthfulness of its representations, absent corrective changes to the packaging.

*Defendants*

18.    Defendant HENKEL OF AMERICA, INC. is organized under the laws of the State of Delaware and maintains its principal executive office at One Henkel Way, Rocky Hill, Connecticut, 06067. HENKEL OF AMERICA, INC. is a subsidiary of HENKEL CORPORATION.

19.    Defendant HENKEL CORPORATION is also organized under the laws of the state of Delaware and maintains its principal executive office at One Henkel Way, Rocky Hill, Connecticut, 06067.

20.    Defendants manufacture, package, distribute, advertise, market, and sell the misbranded Product to millions of consumers throughout the United States. The labeling, packaging, and advertising for the Product, relied upon by Plaintiff, were prepared and/or approved

by Defendants and their agents, and were disseminated by Defendants and their agents through advertising containing the misrepresentations alleged herein. Such labeling, packaging and advertising were designed to encourage consumers to purchase the Product, and misled the reasonable consumer, i.e. Plaintiff and the Class, into purchasing the Product. Defendants own, market, and distribute the Product, and create and/or authorize the unlawful, fraudulent, unfair, misleading and/or deceptive labeling, packaging, and advertising for the Product.

## FACTUAL ALLEGATIONS

### Plaintiff's Product Produced Gel Flakes After Use

21.     Plaintiff DURAN purchased Defendants' Product in order to avoid the gel flakes that are commonly produced by other hair gels. He purchased the Product because its label promised "No Flakes". Plaintiff applied the Product to his hair in order to get a decent hold. After the gel had dried, Plaintiff noticed that the gel had produced white and grayish flakes, similar to that of dried glue. Plaintiff knows that he did not have flakes in his hair prior to applying the gel because he inspected his hair prior to applying the gel.Plaintiff alleges that he would have known whether his hair had produced the flakes, given that natural flakes and gel flakes are distinguishable in texture, color, shape, and nature.

22.     Defendants' Product produced flakes and did not deliver as promised. Plaintiff's experience is not isolated. Plaintiff believes many consumers had similar experiences. **EXHIBIT B** shows online reviews from consumers who claim to have had similar experiences.

23.     Plaintiff's survey of online reviews may not qualify as a rigorous scientific study, but it does demonstrate that Plaintiff's negative experiences with the Product were not uncommon and that their disappointment was not purely subjective. Furthermore, the online reviews also lend plausibility to Plaintiff's allegation that Defendants' "no flakes" claim is deceptive and misleading.

*See* F.T.C v. Willms, No. C11-828 MJP, 2011 WL 4103542, at *5 (W.D. Wash. Sept. 13, 2011)

("[c]onsumer complaints are highly probative of whether a practice is deceptive").

### **Defendants' Product Has Ingredients Known to Produce Flakes**

24.    Defendants Product contains poly N-vinyl-2-pyrrolidone (PVP), a water-soluble

polymer commonly used in hair gel and other cosmetic products. *See* **EXHIBIT C** (emphasis

added). PVP is known to produce flakes:

> **PVP** (poly N-vinyl-2-pyrrolidone) is an excellent film-former that is substantive to hair, forms clear films, and is completely water soluble. However, it absorbs water readily, which in humid weather makes it sticky or tacky to the touch, can cause frizz, and give a dull appearance to the hair. ***In dry weather, it can become brittle and flaky***.[1]
> (emphasis added)

25.    Another article notes:

> PVP is an excellent film-former, is relatively inexpensive, and most notably, is completely water soluble. The water solubility is extremely attractive to companies who wish to sell products to consumers who do not use shampoo or who use very mild shampoos, as it makes the gel easy to rinse. ***However, PVP can be very brittle and prone to flaking in cold dry weather***.[2]
> (emphasis added)

26.    Randy Schueller and Perry Romanowski, two cosmetic scientists with over 50 years

of combined experience, affirm the above statements about PVP in their book, "*Conditioning*

*Agent for Hair and Skin*":

> Today, PVP is occasionally used as a conditioning agent in shampoos. However, PVP and its copolymers are used primarily as styling resins. As hair styles continued to progress, some of the deficiencies of PVP homopolymer began to be noticed. PVP is hygroscopic. It tends to become sticky, dull, and tacky as atmospheric moisture is adsorbed, and, of more significance, the

---

[1] McKay, Tonya, and Tonya McKay Becker. "NaturallyCurly." *NaturallyCurly.com*, 10 July 2015, www.naturallycurly.com/curlreading/kinky-hair-type-4a/the-nitty-gritty-details-about-hair-gel. (emphasis added)
[2] Becker, Tonya McKay. "NaturallyCurly." *NaturallyCurly.com*, 3 Feb. 2011, www.naturallycurly.com/curlreading/products-ingredients/white-flaky-hair-gel-and-other-misadventures. (emphasis added)

adsorbed moisture plasticizes the film and causes ductile fracture of the bond. ***A further drawback of PVP homopolymer was its tendency to become brittle and flaky in dry weather***.[3]
(emphasis added)

27.      Plaintiff has reason to believe that Defendants intend to mislead consumers by labeling their Product "no flakes"—despite it containing ingredients known to produce flakes—in order to boost their sales. Upon information and belief, Defendants employ cosmetic scientists who are familiar with the basic properties of PVP.

### Federal Law Prohibits Misbranded Cosmetics Such as Defendants' Product

28.      All Federal law, agency regulation, and state law identically prohibit Defendants' misleading labeling practices.

29.      Defendants Product is a cosmetic as defined by the FDCA, U.S.C § 321

The term "cosmetic" means (1) articles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body or any part thereof for cleansing, beautifying, promoting attractiveness, or altering the appearance…

30.      Under the FDCA, 21 U.S.C. § 362(a), a cosmetic shall be deemed to be misbranded "[i]f its labeling is false or misleading in any particular." The Product is misbranded regardless of whether or not Defendants intended to mislead consumers: "FDA advises that the term "misleading" does not require any clear implication regarding intent." 58 FR 64123, 64128.

31.      Courts have noted the incorporation of FDA regulations into New York law in evaluating claims brought under NY GBL § 349. *See Ackerman v. Coca-Cola Co*., No. CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156, at *13 (E.D.N.Y. July 21, 2010) ("New York's

---

[3] "Conditioning Agents for Hair and Skin." *Conditioning Agents for Hair and Skin*, by Randy Schueller and Perry Romanowski, vol. 21, Marcel Dekker, Inc, 1999, p. 259. (emphasis added)

Agriculture and Marketing law similarly provides in relevant part that food shall be deemed misbranded '[i]f its labeling is false or misleading in any particular, and incorporates the FDCA's labeling provisions.'"); *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 (CM), 2016 U.S. Dist. LEXIS 149795, at *11 (S.D.N.Y. Oct. 26, 2016) ("Here [in a slack-fill case brought under NY GBL § 349], New York law expressly incorporates the standard imposed by the FDCA."); *N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514, 519 (S.D.N.Y. 2013) (evaluating claims under New York Gen. Bus. Law §§ 349 and 350.

### Defendant's Misleading Labeling Practices Would Deceive, be Material to and be Relied Upon by a Reasonable Consumer

32.     Defendants' misleading packaging practices were material to, and were relied upon, by Plaintiff and the Class. These practices would also be material to, and relied upon by a reasonable consumer since reasonable consumers naturally attach considerable importance to the quality of the product they believe they are receiving.

33.     Plaintiff and the Class did not know, and had no reason to know, that the Product produces flakes.

34.     Defendants' Product labeling as alleged herein is deceptive and misleading and was designed to increase sales of the Product. Defendants' misrepresentations are part of its systematic Product labeling and packaging practices.

35.     Any disclosures, including the posting of the list of ingredients, could not cure Defendants' affirmative misrepresentations that the Product produces "no flakes."

### Plaintiff and the Class Were Injured as a Result of Defendants' Misrepresentations

36.     As shown above, the Product produces flakes, violating its guarantee that it produces "no flakes".

37.     Plaintiff and Class members were thus injured when they paid the full price of the Product and received an inferior Product to what was represented to them by Defendants.

38.     Plaintiff and Class members were thus deprived of the benefit of their bargains and injured in an amount up to the purchase price, to be determined by expert testimony at trial.

## CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class:

> All persons or entities who purchased the Product in the United States during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the Nationwide Class")

40.     In the Alternative, Plaintiff DURAN seeks to represent a class consisting of:

> All persons or entities who purchased the Product in New York during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the New York Class")

41.     The proposed Class excludes current and former officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, Defendants' legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

42.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through the appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class. Other members of the Class may be identified from records maintained by Defendants and may be notified of the pendency of this action by mail, or by advertisement, using the form of notice similar to that customarily used in class actions such as this.

43.     Plaintiff's claims are typical of those of the Class members because Plaintiff and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiff and other Class members purchased Defendants' Product and sustained similar injuries arising out of Defendants' conduct in violation of Federal and New York law. Defendants' unlawful, unfair, and fraudulent business practices create the same consumer confusion and deception, and thus the same injury, irrespective of where they occurred or were experienced. The injuries of the Class were caused directly by Defendants' unfair and deceptive practices. In addition, the factual underpinning of Defendants' misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories. Plaintiff will fairly and adequately protect the interests of the members of the Class in that Plaintiff has no interests antagonistic to those of the other members of the Class. Plaintiff have retained experienced and competent counsel.

44.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the Class to individually seek redress for the wrongful conduct alleged herein. If Class treatment of these claims were not available, Defendants would unfairly receive millions of dollars or more in improper charges.

45.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

i.    Whether Defendants labeled, packaged, marketed, advertised and/or sold Product to Plaintiff and Class members, using false, misleading and/or deceptive packaging and labeling;

ii.    Whether Defendants' actions constitute violations of the consumer protection laws of New York, the other states, and the District of Columbia;

iii.    Whether Defendants omitted and/or misrepresented material facts in connection with the labeling, ingredients, marketing, advertising and/or sale of the Product;

iv.    Whether Defendants' labeling, packaging, marketing, advertising and/or selling of Product constituted an unfair, unlawful or fraudulent practice;

v.    Whether, and to what extent, injunctive relief should be imposed on Defendants to prevent such conduct in the future;

vi.    Whether the members of the Class have sustained damages as a result of Defendants' wrongful conduct;

vii.    The appropriate measure of damages and/or other relief; and

viii.    Whether Defendants should be enjoined from continuing their unlawful practices.

46.    The Class is readily definable, and prosecution of this action as a Class action will reduce the possibility of repetitious litigation. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

47.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

48.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

49.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

50.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

51.     Defendants' conduct is generally applicable to the Class as a whole and Plaintiff seek, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendants' systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

## COUNT I.

## INJUNCTION FOR VIOLATIONS OF THE NEW YORK DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (New York General Business Law § 349)

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

52. Plaintiff DURAN realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

53. Plaintiff DURAN brings this claim individually and on behalf of the other members of the Class for an injunction for violations of New York's Deceptive Acts or Practices Law, General Business Law ("NY GBL") § 349.

54. NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

55. Under the New York Gen. Bus. Code § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 . . . claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co*., 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

56. The practices employed by Defendants, whereby Defendants advertises, promotes, markets and sells their Product as producing "no flakes", are unfair, deceptive, misleading and are in violation of the NY GBL § 349.

57. Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in their own name to enjoin such unlawful act or practice, an action to recover

their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendants willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

58.     The practices employed by Defendants, in which they advertise, promote, and market their Product as producing "no flakes" are unfair, deceptive, misleading, and in violation of the NY GBL § 349.

59.     The foregoing deceptive acts and practices were directed at consumers.

60.     Defendants should be enjoined from marketing the Product as producing "no flakes" pursuant to NY GBL § 349.

61.     Plaintiff, on behalf of himself and all others similarly situated, respectfully demands a judgment enjoining Defendants' conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.

## COUNT II.

## DAMAGES FOR VIOLATIONS OF THE NEW YORK DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (New York General Business Law § 349)

*(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)*

62.     Plaintiff DURAN realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

63.     Plaintiff DURAN brings this claim individually and on behalf of the other members of the Class for violations of NY GBL § 349.

64.     Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in their own name to enjoin such unlawful acts or practices, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages, up to one thousand dollars, if the court finds the defendants willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

65.     By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices by misbranding their Product as producing "no flakes" when it in fact does.

66.     The practices employed by Defendants, whereby Defendants advertise, promote, market and sell their Product as producing "no flakes", are unfair, deceptive and misleading and are in violation of the NY GBL § 349, and the FDCA, 21 U.S.C. § 362(a) in that said Product are misbranded.

67.     The foregoing deceptive acts and practices were directed at consumers.

68.     Plaintiff DURAN and the other Class members suffered a loss as a result of Defendants' deceptive and unfair trade acts. Specifically, Plaintiff DURAN and the other Class members suffered monetary losses associated with the purchase of the Product, i.e., receiving a more inferior Product than the ones they agreed to purchase. In order for Plaintiff DURAN and Class members to be made whole, they need to receive the full amount that they paid for the Product.

# COUNT III.

## DAMAGES AND INJUCTIVE RELIEF FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §§ 350 AND 350-a(1) (FALSE ADVERTISING)

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

69.     Plaintiff DURAN brings this claim individually and on behalf of members of the Class against Defendants.

70.     Plaintiff DURAN and members of the Class reallege and incorporate by reference the allegations contained in all preceding paragraphs, and further allege as follows:

71.     Defendants engage in the "conduct of … business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

72.     New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …" N.Y. Gen. Bus. Law § 350-a(1).

73.     Defendants caused to be made or disseminated through New York, through advertising, marketing and other publications, statements that were untrue or misleading, and that were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers and the New York Class.

74.     Defendants' affirmative misrepresentations and misrepresentations by way of omission, as described in this Complaint, were material and substantially uniform in content,

presentation, and impact upon consumers at large. Consumers purchasing the Product were and continue to be exposed to Defendants' material misrepresentations.

75.     Defendants violate N.Y. Gen. Bus. Law § 350 because the misrepresentations and/or omissions regarding the Product, as set forth above, were material and likely to deceive a reasonable consumer.

76.     Plaintiff DURAN and members of the Class have suffered an injury, including the loss of money or property, as a result of Defendants' false and misleading advertising. In purchasing the defective Product, Plaintiff DURAN and members of the Class relied on the misrepresentations and/or omissions relating to the quality of the Product. Those representations were false and/or misleading because the Product were advertised as producing "no flakes" when it in fact does, denying Plaintiff DURAN and the members of the Class the benefit of their bargain.

77.     Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiff DURAN and members of the Class seek monetary damages (including actual damages and minimum, punitive, or treble and/or statutory damages pursuant to GBL § 350-a(1)), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

## COUNT IV.

## FRAUDULENT MISREPRESENTATION/CONCEALMENT

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar fraudulent misrepresentation/concealment law of other states and the District of Columbia to the extent New York fraudulent misrepresentation/concealment law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

78.     Plaintiff realleges and incorporates herein by reference the allegations contained in all the preceding paragraphs of this Complaint, as if fully set forth herein.

79.    A claim for fraudulent misrepresentation requires a plaintiff to allege "[1] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [2] made for the purpose of inducing the other party to rely upon it, [3] justifiable reliance of the other party on the misrepresentation or material omission, and [4] injury." *Mandarin Trading Ltd. v. Wildenstein*, 2011 NY Slip Op 741, ¶ 3, 16 N.Y.3d 173, 178, 919 N.Y.S.2d 465, 469, 944 N.E.2d 1104, 1108 (quoting *Lama Holding Co. v Smith Barney Inc*., 88 NY2d 413, 421, 668 NE2d 1370, 646 NYS2d 76 [1996]).

80.    Element #1 is satisfied because Defendants knowingly misrepresented to Plaintiff and the public by either act or omission that the Product  does notproduce flakes.

81.    Element #2 is satisfied because these and other similar representations were made for the purpose of inducing the reliance of Plaintiff and the Class, or else it would not have been placed on the front label.

82.    Element #3 is satisfied because Plaintiff DURAN'S reliance on these deceptive representations and/or omissions was justified. He had no way of discovering that they were not true.

83.    Element #4 is satisfied because Plaintiff DURAN suffered financial injury as result of Defendants' misrepresentation. The Product Plaintiff paid for did not deliver on the qualities it promised and was not what the he agreed to pay for.

84.    Defendants' conduct as described herein, including but not limited to its failure to provide adequate labeling, and continued manufacture, sale, and marketing of the Product, evidences intentional disregard for the rights of Plaintiff and warrant the imposition of punitive damages.

# COUNT V.

## UNJUST ENRICHMENT

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar fraudulent misrepresentation/concealment law of other states and the District of Columbia to the extent New York fraudulent misrepresentation/concealment law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

85.     Plaintiff realleges and incorporate herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

86.     As a result of Defendants' deceptive, fraudulent and misleading labeling, packaging, advertising, marketing and sales of Product, Defendants were enriched, at the expense of Plaintiff and members of the Class, through the payment of the purchase price for Defendants' Product.

87.     Plaintiff and members of the Class conferred a benefit on Defendants through purchasing the Product, and Defendants have knowledge of this benefit and has voluntarily accepted and retained the benefits conferred on it.

88.     Defendants will be unjustly enriched if allowed to retain such funds, and each Class member is entitled to an amount equal to the amount they enriched Defendants and for which Defendants has been unjustly enriched.

89.     The focus of an unjust enrichment claim is whether the Defendants was unjustly enriched. At the core of New York law are three fundamental elements – the Defendants received a benefit from the plaintiff and it would be inequitable for the Defendants to retain that benefit without compensating the plaintiff. "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendants benefitted; 2) at the plaintiff's expense; and 3) that equity and good conscience require restitution. The benefit to the defendant is not limited to

monies, and can be either a direct or an indirect benefit." *State Farm Mut. Auto. Ins. Co. v. Grafman*, 655 F. Supp. 2d 212, 222 (E.D.N.Y. 2009) (internal quotations and citations omitted).

90.     Under the circumstances, it would violate equity and good conscience to permit Defendants to retain the ill-gotten benefits that it received from Plaintiff and others similarly situated, given that the quality of the Product purchased by Plaintiff and the Class was not what Defendants represented it as being through the Product's packaging. It would be unjust and inequitable for Defendants to retain the benefit of selling its Product in packaging labeled "no flakes" without restitution to Plaintiff and others similarly situated because Plaintiff and the Class did not receive the full benefit of their bargain. In order for Plaintiff and Class members to be made whole, they must receive a full refund.

91.     In New York, unjust enrichment serves as a mechanism to reimburse defrauded consumers even when a product was purchased indirectly through a third party and there is no direct connection between the parties. *See Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 404 (E.D.N.Y. 2010), (denying motion to dismiss unjust enrichment claim where plaintiff was not in privity with defendant); *see also Famular v. Whirlpool Corp.*, No. 16 CV 944 (VB), 2017 U.S. Dist. LEXIS 8265 (S.D.N.Y. Jan. 19, 2017) ("New York law does not require plaintiff to have conferred a direct benefit on defendants to state a claim for unjust enrichment. Rather, the law requires only that the plaintiff's relationship with a defendant not be too attenuated.") (internal quotations and citations omitted).

## COUNT VI.

## COMMON LAW FRAUD

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar fraudulent misrepresentation/concealment law of other states and the District of Columbia**

**to the extent New York fraudulent misrepresentation/concealment law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

92.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

93.     Defendants intentionally made materially false and misleading claims through its representations that the Product produces "no flakes", intending that Plaintiff and the Class rely on them.

94.     Plaintiff and Class members reasonably relied on Defendants' false and misleading representations and omissions. They did not know, and had no reason to know, the truth about the Product as the time they purchased them. They would not have purchased the Product had they known the truth.

95.     Plaintiff and Class members have been injured as a result of Defendants' fraudulent conduct and must be compensated in an amount to be determined at trial.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff on behalf of himself and all others similarly situated, seeks judgment against Defendants as follows:

> a.   An Order that this action be maintained as a class action, appointing Plaintiff as representative of the Nationwide Class or, in the alternative, the New York Class;
>
> b.   An Order appointing the undersigned attorney as Class Counsel in this action;
>
> c.   Restitution and disgorgement of all amounts obtained by Defendants as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;
>
> d.   All recoverable compensatory and other damages sustained by Plaintiff and Class members;

e.  Actual and/or statutory damages for injuries suffered by Plaintiff and Class members in the maximum amount permitted by applicable law;

f.  An order for injunctive relief (i) requiring Defendants to immediately cease their wrongful conduct as set forth in this Complaint; (ii) ordering Defendants to engage in a corrective advertising campaign; and (iii) requiring Defendants to reimburse Plaintiff and all Class members, up to the amounts paid for the Product;

g.  Statutory pre-judgment and post-judgment interest on any amounts;

h.  Payment of reasonable attorneys' fees and costs; and

i.  Such other relief as the Court may deem just and proper.

# <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

DATED: March 28th, 2019

                                                  **LEE LITIGATION GROUP, PLLC**

By: _____ /s/ *C.K. Lee* _____
                          C.K. Lee, Esq.

C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Telephone: (212) 465-1188
Facsimile: (212) 465-1181
*Attorneys for Plaintiff and the Class*