UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ABEL DURAN,<br>*On behalf of himself and all others*<br>*similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>HENKEL CORPORATION,<br><br>Defendants. | 19-CV-02794 (PAE)<br><br>**ORAL ARGUMENT REQUESTED** |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS COMPLAINT AND/OR TO STRIKE THE CLASS CLAIMS**

---

Keith E. Smith
Jaclyn DeMais
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York 10166
(212) 801-9200
(212) 801-6400 (fax)

*Attorneys for Defendant,*
*Henkel Corporation*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 3

      A.    Allegations of the Complaint ............................................................................ 3

      B.    Class Allegations ................................................................................................ 4

      C.    Causes of Action ................................................................................................ 5

      D.    Alleged Damages ................................................................................................ 5

ARGUMENT .................................................................................................................... 6

    POINT 1       PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF ........ 6

      A.    Plaintiff Fails to Adequately Plead Injury in Support of His Claims Under
           New York General Business Law Sections 349 And 350 (Counts I-III) ................ 7

      B.    The Allegedly Misleading Statement is Non-Actionable Puffery (Counts I-
           IV, VI) ................................................................................................................ 9

      C.    Plaintiff Fails to State a Claim for Unjust Enrichment (Count V) ........................ 11

      D.    Plaintiff Fails to Plead Fraud-Based Claims with the Requisite
           Particularity (Counts IV and VI) ...................................................................... 13

    POINT 2    PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF SHOULD BE
             DISMISSED BECAUSE HE LACKS STANDING ............................................ 14

    POINT 3    PLAINTIFF'S CLASS CLAIMS SHOULD BE STRICKEN .............................. 15

      A.    The Putative Class Members Do Not Have Standing ............................................ 17

      B.    The Putative Classes Cannot Satisfy Rule 23 ...................................................... 19

CONCLUSION .................................................................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................6, 7, 19

*Avola v. La.-Pac. Corp.*,
    991 F. Supp. 2d 381, 391-92 (E.D.N.Y. 2014) ......................................................10

*Bell Atl. Corp v. Twombly*,
    550 U.S. 544 (2007).............................................................................................6, 7

*Bowring v. Sapporo U.S.A., Inc.*,
    234 F. Supp. 3d 386 (E.D.N.Y. 2017) ....................................................................9

*Brown v. Kelly*,
    609 F.3d 467 (2d Cir. 2010).................................................................................19

*Buonasera v. Honest Co., Inc.*,
    208 F. Supp. 3d 555 (S.D.N.Y. 2016) ..................................................................11

*Casey v. Odwalla, Inc.*,
    338 F. Supp. 3d 284 (S.D.N.Y. 2018)..................................................................11

*Charron v. Pinnacle Grp. N.Y. L.L.C.*,
    269 F.R.D. 221 (S.D.N.Y. 2010) .........................................................................20

*Clark v. McDonald's Corp.*,
    213 F.R.D. 198 (D.N.J. 2003)..............................................................................16

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013)..........................................................................................17

*Corsello v. Verizon N.Y. Inc.*,
    967 N.E.2d 1177 (N.Y. 2012)...............................................................................11

*DaCorta v. AM Retail Grp., Inc.*,
    No. 16-CV-01748 (NSR), 2018 WL 557909 (S.D.N.Y. Jan. 23, 2018)............8, 14

*Davito v. Amtrust Bank*,
    743 F.Supp.2d 114 (E.D.N.Y. 2010) ...................................................................16

*Denenberg v. Rosen*,
    71 A.D.3d 187, 897 N.Y.S.2d 391 (1st Dept. 2010).............................................7

*Denney v. Deutsche Bank AG,*
    443 F.3d 253 (2d Cir. 2006).................................................................................17

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.,*
    400 Fed.Appx. 611 (2d Cir. Nov. 24, 2010) ........................................................11

*Feinstein v. Firestone Tire & Rubber Co.,*
    535 F. Supp. 595 (S.D.N.Y. 1982) ......................................................................20

*Fink v. Time Warner Cable,*
    714 F.3d 739 (2d Cir. 2013).................................................................................9

*Frank v. DaimlerChrysler Corp.,*
    292 A.D.2d 118, 741 N.Y.S.2d 9 (1st Dept. 2002)..............................................7

*Gen. Tel. Co. v. Falcon,*
    457 U.S. 147 (1982)............................................................................................16

*Goel v. Ramachandran,*
    111 A.D.3d 783, 975 N.Y.S.2d 428 (2d Dept. 2013) ..........................................11

*Greene v. Gerber Prod. Co.,*
    262 F. Supp. 3d 38 (E.D.N.Y. 2017) ..................................................................8

*Hidalgo v. Johnson & Johnson Consumer Companies, Inc.,*
    148 F. Supp. 3d 285 (S.D.N.Y. 2015)...........................................................12, 15

*Hubbard v. Gen. Motors Corp.,*
    No. 95 CIV. 4362, 1996 WL 274018 (S.D.N.Y. May 22, 1996)......................9, 10

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.,*
    936 F.2d 759 (2d Cir. 1991)...............................................................................18

*In re Initial Pub. Offerings Sec. Litig.,*
    471 F.3d 24 (2d Cir. 2006)..................................................................................20

*Izquierdo v. Mondelez Int'l, Inc.,*
    No. 16-CV-04697 (CM), 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ...........8, 14

*James L. Turkle Trust v. Wells Fargo & Co.,*
    602 Fed. App'x. 360 (9th Cir. 2015*)* ..................................................................18

*Kassman v. KPMG LLP,*
    925 F. Supp. 2d 453 (S.D.N.Y. 2013)................................................................16

*Kommer v. Bayer Consumer Health,*
    710 F. App'x 43 (2d Cir. 2018) ..........................................................................14

*Lerner v. Fleet Bank, N.A.*,
 459 F.3d 273 (2d Cir. 2006) ............................................................................................ 13, 14

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
 797 F.3d 160 (2d Cir. 2015) .................................................................................................... 13

*Loreto v. Procter & Gamble Co.*,
 No. 1:09-cv-815, 2013 U.S. Dist. LEXIS 162752 (S.D. Ohio Nov. 15, 2013) ...................... 17

*Luciano v. Eastman Kodak Co.*,
 No. 05-CV-6463T, 2006 WL 1455477 (W.D.N.Y. May 25, 2006) ....................................... 16

*Nicosia v. Amazon.com, Inc.*,
 834 F.3d 220 (2d Cir. 2016) .................................................................................................... 14

*Nordwind v. Rowland*,
 584 F.3d 420 (2d Cir. 2009) .................................................................................................... 12

*O'Brien v. Nat'l Prop. Analysts Partners*,
 936 F.2d 674 (2d Cir. 1991) .................................................................................................... 13

*Oscar v. BMW of N. Am., LLC*,
 274 F.R.D. 498 (S.D.N.Y. 2011) ....................................................................................... 19, 20

*Oshana v. Coca-Cola Co.*,
 472 F.3d 506 (7th Cir. 2006) .................................................................................................. 17

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
 85 N.Y.2d 20, 623 N.Y.S.2d 529 (1995) ............................................................................... 7, 9

*Pelman v. McDonald's Corp.*,
 237 F. Supp. 2d 512 (S.D.N.Y. 2003) .................................................................................... 10

*PFT of Am., Inc. v. Tradewell, Inc.*,
 No. 98 CIV. 6413 (RPP), 1999 WL 179358 (S.D.N.Y. Mar. 31, 1999) ................................. 16

*Preira v. Bancorp Bank*,
 885 F. Supp. 2d 672 (S.D.N.Y. 2012) .................................................................................... 12

*Price v. L'Oreal USA, Inc.*,
 No. 17 CIV. 0614(LGS), 2017 WL 4480887 (S.D.N.Y. Oct. 5, 2017) .................................. 11

*Rodrigues v. Family Justice Centers*,
 No. 18-CV-6999 (JPO), 2019 WL 1988526 (S.D.N.Y. May 6, 2019) .................................... 13

*Rodriguez v. It's Just Lunch, Int'l*,
 No. 07CIV9227(SHS)(KNF), 2010 WL 685009 (S.D.N.Y. Feb. 23, 2010) ............................ 8

*Ross-Randolph v. Allstate Ins.*,
    No. DKC-99-3344, 2001 WL 36042162 (D. Md. May 11, 2001) .........................................16

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000) ..................................................................................................18

*S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.*,
    84 F.3d 629 (2d Cir. 1996) ....................................................................................................9

*Saravia v. Select Portfolio Serv., Inc.*,
    2014 WL 2865798 (D.Md. June 23, 2014) ............................................................................19

*In re Scotts EZ Seed Litig.*,
    No. 12 CV 4727 VB, 2013 WL 2303727 (S.D.N.Y. May 22, 2013) .................................9, 10

*Silverman v. Teamsters Local 210 Affiliated Health & Ins. Fund*,
    761 F.3d 277 (2d Cir. 2014) ..................................................................................................6

*Small v. Lorillard Tobacco Co.*,
    94 N.Y.2d 43, 698 N.Y.S.2d 615 (1999) .............................................................................7, 8

*Sokoloff v. Town Sports Int'l, Inc.*,
    778 N.Y.S.2d 9 (1st Dep't 2004) ..........................................................................................18

*Spagnola v. The Chubb Corp.*,
    574 F.3d 64 (2d Cir. 2009) ..................................................................................................18

*Spiro v. Healthport Techs., LLC*,
    73 F. Supp. 3d 259 (S.D.N.Y. 2014) ....................................................................................14

*Tello v. Bank of Am. N.A.*,
    2014 WL 99299 (D.Nev. Jan. 3, 2014) ................................................................................19

*Thompson v. Merck & Co.*,
    2004 WL 62710 (E.D. Pa. Jan. 6, 2004) ..............................................................................16

*Tietsworth v. Sears*,
    No. 720 F.Supp.2d 113 (N.D. Cal. 2010) ............................................................................16

*In re Vanarthos*,
    445 B.R. 257 (Bankr. S.D.N.Y. 2011) ................................................................................18

*Verizon Directories Corp. v. Yellow Book USA, Inc.*,
    309 F. Supp. 2d 401 (E.D.N.Y. 2004) ................................................................................10

*In re Welspun Litig.*,
    No. 16 CV 6792 (VB), 2019 WL 2174089 (S.D.N.Y. May 20, 2019) ....................................13

*Woods v. Maytag Co.*,
    807 F. Supp. 2d 112 (E.D.N.Y. 2011) .................................................................13

*Wright v. Family Dollar, Inc.*,
    No. 10 C 4410, 2010 WL 4962838 (N.D. Ill. Nov. 30, 2010)................................16

*Zaccagnino v. Nissan N. Am., Inc.*,
    2015 WL 3929620 (S.D.N.Y. June 17, 2015) .....................................................10

## **Rules**

Fed. R. Civ. P. 12(f) ..................................................................................................15

Fed. R. Civ. P. 23(c)(1) .............................................................................................16

Fed. R. Civ. P. 23(d)(1)(D) .......................................................................................16

## **Other Authorities**

Tonya Mckay Becker, White, Flaky Hair Gel and Other Misadventures,
    NaturallyCurly.com, Feb. 3, 2001,
    https://www.naturallycurly.com/curlreading/products-ingredients/white-flaky-
    hair-gel-and-other-misadventures ..............................................................................20

Defendant Henkel Corporation ("Henkel") submits this Memorandum of Law in support of its motion to dismiss the Complaint (the "Complaint" or "Compl.") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and to strike Plaintiff's class claims pursuant to Rules 12(f) and 23(b)(3) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff applied gel to his hair and, some time later, noticed white and grayish flakes. Based on that fact, and not much more, he now seeks to represent a nationwide class of all purchasers of the hair gel, seeking millions of dollars in damages and injunctive relief, all because the gel says "no flakes" on the label. This reference is taken out of context. The front of the label actually refers to the product as an "invincible styling gel" and then lists "non-sticky - no flakes - crazy hold". The back of the label provides the following description:

> This gels hold is no joke! So put it down and slowly back away if you are not up for the strongest gel hold ever!
>
> This non-sticky, no-flake formula is powered by high-tech styling agent - we call it Alpha XTR. Call it what you want, it lets you take your hair to new heights. Or do your own thing and cement your individual style.
>
> And when the party comes to an end, easily un-glue with a little shampoo.
>
> Go ahead - style away!

*See* Certification of Keith E. Smith ("Smith Cert."), Exhibit "A." The references to no flakes or no-flake formula taken in the context of the complete label are mere opinion or puffery. They are not a guaranty that no user, ever, under any circumstance, applied to any hair, under any conditions will see a flake.

Plaintiff's theory is that the Schwarzkopf got2b ultra glued Invincible Styling Gel (the "Product") contains a chemical ingredient that is common in hair gels, but that produces flakes in

dry and/or cold climates.  Consequently, Henkel is accused of fraud, intentionally misleading consumers, false advertising, and unjust enrichment.  For a theory that hinges on particularities, the Complaint is conspicuously bare.  As one example, Plaintiff's cherry-picked claims omit the fact that consumers of the Product are overwhelmingly satisfied with the Product and have not experienced any flaking.  Accordingly, the vast class of aggrieved consumers that Plaintiff purports to represent does not exist.

The Complaint should be dismissed for several reasons.  First, Plaintiff alleges that he noticed flakes in his hair, but his Complaint is missing the facts necessary to sustain a plausible claim.  Putting aside the fact that Plaintiff fails to allege any detail surrounding his use of the Product, he also critically fails to adequately allege how the presence of flakes amounts to a legally cognizable injury.  Assuming it is true that Plaintiff noticed flakes after using the Product, his Complaint still fails as a matter of law because he does not allege sufficient facts to establish a plausible injury.

Second, Plaintiff claims that Henkel's labelling of the Product is fraudulent, but he fails to allege the detail necessary to sustain a fraud claim in this Court.  In particular, Plaintiff does not—because he cannot—plausibly allege that Henkel had reason to know that, when properly applied, the Product causes its consumers to experience flaking and labeled the Product with the phrase "no flakes" anyway.

Third, Plaintiff expressly alleges in his Complaint that he will not purchase this Product again.  Accordingly, under well-established law in this Circuit, he lacks standing to seek injunctive relief.

Finally, to the extent any of Plaintiff's claims survive Henkel's motion to dismiss, his class claims should be stricken from the Complaint.  Although motions to strike at the pleading stage

are rarely granted in the Second Circuit, this case presents an appropriate opportunity for conserving judicial resources and striking class claims that have no chance of surviving class certification.  As will become apparent, the class Plaintiff seeks to represent consists mainly of consumers who have no standing.  And, the putative class fails to satisfy Rule 23, if the Court even reaches that analysis.

Accordingly, for the reasons set forth more fully below, the Court should dismiss the Complaint in its entirety.  In the alternative, the Court should strike Plaintiff's class claims now.  Plaintiff's proposed class does not have standing and a class will never be certified, no matter what discovery reveals, so allowing the class claims to survive will lead to a waste of judicial resources.

## STATEMENT OF FACTS

### A. Allegations of the Complaint

The Complaint is based on one simple allegation: that the Product is labeled as producing "no flakes" when it does in fact produce flakes. Compl. ¶ 1-2.  Plaintiff claims that he and the class members viewed the label and relied on the representation that it did not produce flakes when deciding to purchase the Product.  Compl. ¶ 3.

The factual allegations underpinning Plaintiff's claim are brief.  Plaintiff alleges that on November 21, 2018, he purchased a six-ounce bottle of the Product at a CVS in Queens.  Compl. ¶ 17.  He alleges that he paid $7.99, but he does not attach a receipt.  Compl. ¶ 17.  Plaintiff claims that he purchased the Product "to avoid the gel flakes that are commonly produced by other hair gels." Compl. ¶ 21.  He alleges that he applied the Product to his hair, and at some point, after the gel had dried, he noticed white and grayish flakes.  Compl. ¶ 21.  The Complaint does not specify the date or dates on which he used the Product, his location when he applied the Product, the

weather on the date he noticed flaking, whether his hair was wet or dry when he applied the Product, or whether he read and followed the instructions on the Product's back panel.

To bolster the claims in his Complaint, Plaintiff selected six out of 704 consumer reviews from Amazon.com (less than 1% of all reviews) and two out of 165 reviews on Walmart.com (1.2% of all reviews) and attached those purported reviews to the Complaint.  Compl. ¶ 23, Ex. B. Plaintiff alleges that these eight reviews "lend plausibility to Plaintiff's allegations[.]"  Compl. ¶ 23.  However, the Court can and should consider the whole of each document, namely the complete universe of Product reviews from which the reviews chosen by Plaintiff are taken.  These documents show that consumers were overwhelmingly satisfied with the Product and suffered no injury.

In addition, Plaintiff claims that the Product contains poly N-vinyl-pyrrolidone ("PVP"), a water-soluble polymer commonly found in hair gel.  Compl. ¶ 24.  Plaintiff quotes select passages from two articles published on NaturallyCurly.com, which claim that PVP is prone to flaking in cold and/or dry weather.  Compl. ¶ 24-25.  He also cites a passage from a book called "Conditioning Agent for Hair and Skin," which claims that PVP has a tendency to become flaky in dry weather.  Compl. ¶ 26.

**B.  <u>Class Allegations</u>**

Plaintiff purports to bring his claims on behalf of a class consisting of "[a]ll persons or entities who purchased the Product in the United States during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ('the Nationwide Class')."  Compl. ¶ 39.  In the alternative, Plaintiff "seeks to represent a class consisting of: All persons or entities who purchased the Product in New York during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the New York Class").  Compl. ¶ 40.  The rest of

Plaintiff's class allegations consist of boilerplate recitation of the class action standards. He claims that "the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through the appropriate discovery[.]" Compl. ¶ 42. He claims that "[o]ther members of the Class may be identified from records maintained by Defendants[.]" Compl. ¶ 42. In addition, he alleges, in a conclusory fashion, that the Class members "sustained similar injuries," Compl. ¶ 43, and that "[a] class action is superior to other available methods for the fair and efficient adjudication of this controversy." Compl. ¶ 43. Furthermore, Plaintiff claims that there are common questions of law and fact, which "predominate over any questions solely affecting individual members of the Class." Compl. ¶ 45.

### C.  **Causes of Action**

Plaintiff asserts six causes of action[1]: (1) injunctive relief for violations of the New York Deceptive and Unfair Trade Practices Act, Section 349; (2) damages for violations of the New York Deceptive and Unfair Trade Practices Act, Section 349; (3) damages and injunctive relief for violations of the New York Deceptive and Unfair Trade Practices Act, Section 350 and 350-a(1); (4) fraudulent misrepresentation/concealment; (5) unjust enrichment; and (6) common law fraud. On top of these claims, Plaintiff alleges violations of the consumer protection statutes enacted in every state. Compl. ¶ 11.

### D.  **Alleged Damages**

Plaintiff claims that he and Class members were "injured when they paid the full price of the Product and received an inferior Product to what was represented to them[.]" Compl. ¶ 37.

---

[1] Each cause of action is "brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class."

Moreover, Plaintiff claims that the Product "was worth far less" than what he paid for it, "as he paid a price commensurate with the value of a gel that does not produce undesirable flakes." Compl. ¶ 17.  There is no allegation as to the price of "a gel that does not produce undesirable flakes."  Nevertheless, Plaintiff claims that he "suffered economic harm in an amount up to the full amount of his purchase price[.]"  Compl. ¶ 17.  Furthermore, Plaintiff states that he and the Class members would not have purchased the Product had they known that it causes flakes, Compl. ¶ 94, and that if he encountered the Product in the future "he could not rely on the truthfulness of its representations," Compl. ¶ 17.

Accordingly, Plaintiff seeks restitution and disgorgement, compensatory damages, actual and/or statutory damages, injunctive relief, interest, and attorneys' fees and costs.  Compl. Prayer for Relief.

## ARGUMENT

### POINT I

### PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF

To survive a motion to dismiss for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007).   Although all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party, *Silverman v. Teamsters Local 210 Affiliated Health & Ins. Fund*, 761 F.3d 277, 284 (2d Cir. 2014), those factual allegations "must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

A complaint must provide "more than an unadorned, the defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A pleading that offers only "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief'.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Thus, where the facts alleged do not permit the court to infer more than "the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Id*. at 679.

### A.  Plaintiff Fails to Adequately Plead Injury in Support of His Claims Under New York General Business Law Sections 349 And 350 (Counts I-III)

To state a claim for violation of GBL section 349, Plaintiff must allege that (1) the challenged actions of Henkel are directed to consumers; (2) Henkel had engaged in an act or practice that is deceptive or misleading in a material way; and (3) Plaintiff has been injured by reason of such deceptive or misleading acts.  *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25-26, 623 N.Y.S.2d 529, 532-33 (1995). The elements of a claim for violation of GBL section 350 are identical to those for violation of GBL section 349, except that the subject "act or practice" must consist of allegedly false advertising.  *Denenberg v. Rosen*, 71 A.D.3d 187, 194, 897 N.Y.S.2d 391, 395 (1st Dept. 2010).  In this case, Plaintiff's claims should be dismissed because he fails to adequately allege the third element.

Regardless of a defendant's alleged conduct, a defendant's acts and omissions are not actionable under GBL sections 349 or 350 unless the conduct actually results in an injury to the plaintiff who is bringing the action.  *See generally Frank v. DaimlerChrysler Corp.*, 292 A.D.2d 118, 121, 741 N.Y.S.2d 9, 12-13 (1st Dept. 2002).  In particular, allegedly deceptive acts cannot *also* serve as the alleged injury—instead, an adequate and independent factual allegation of harm to the plaintiff is necessary to state a viable claim for relief under the GBL.  *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56, 698 N.Y.S.2d 615, 620-21 (1999) (in affirming dismissal of GBL

§ 349 claim,[2] holding that "proof that a 'material deceptive act or practice *caused actual, although not necessarily pecuniary, harm*' is required to impose compensatory damages") (emphasis in original).   "[C]onsumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have not suffered an injury cognizable under NYGBL § 349 [and 350]." *Rodriguez v. It's Just Lunch, Int'l*, No. 07CIV9227(SHS)(KNF), 2010 WL 685009, at *9 (S.D.N.Y. Feb. 23, 2010); *see also DaCorta v. AM Retail Grp., Inc.*, No. 16-CV-01748 (NSR), 2018 WL 557909, at *7 (S.D.N.Y. Jan. 23, 2018) ("Simply alleging that a plaintiff 'would not have purchased' the product but for the deceptive practices, is, alone insufficient.").   Instead, courts in the Second Circuit look for an injury apart from the purchase of the product itself, such as an allegation that the misrepresentation allowed the defendant to charge a premium for the product.  *See DaCorta*, at *8 (collecting cases).

Here, without a plausible allegation that Plaintiff inflated the price of the product by stating "no flakes" on the label, Plaintiff fails to plead a cognizable injury under the GBL.  Plaintiff uses the term "premium" once in the Complaint, claiming that he paid a "premium price of $7.99." (Compl. ¶17).  However, courts have held that such an unsupported allegation fails to sustain a claim.  *See, e.g. DaCorta*, at *9 (stating that the "Plaintiff's apparent belief that simply alleging the word 'premium' will suffice, is simply incorrect" and holding that the plaintiff failed to plead any connection between the alleged misrepresentation and the value of the product); *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM), 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) ("Simply because Plaintiffs here recite the word 'premium' multiple times in their Complaint does not make Plaintiffs' injury any more cognizable."); *cf. Greene v. Gerber Prod. Co.*, 262 F. Supp.

---

[2]   The *Small* plaintiff did not challenge the dismissal of her GBL § 350 claim on appeal.  *Small*, 94 N.Y.2d at 56 n.3, 698 N.Y.S.2d at 621 n.3.

3d 38, 68 (E.D.N.Y. 2017) (finding injury properly pleaded for GBL § 349 claim where plaintiff included in complaint a comparison to a competing product that did not make the alleged misrepresentation on the label and charged 41% less for the product).  Because the Complaint lacks any facts or plausible basis for connecting the alleged misrepresentation to the price of the product, Plaintiff fails to adequately allege that he suffered a cognizable injury.  Thus, his claims under GBL sections 349 and 350 should be dismissed.

### B.  The Allegedly Misleading Statement is Non-Actionable Puffery (Counts I-IV, VI)

The second element of a claim under sections 349 and 350 requires that the defendant's actions were "misleading in a material way."  *In re Scotts EZ Seed Litig.*, No. 12 CV 4727 VB, 2013 WL 2303727, at *11 (S.D.N.Y. May 22, 2013) (citing *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000).  Similarly, "[i]n order to state a claim for fraud or negligent misrepresentation, plaintiff must allege, inter alia, the misrepresentation of a material fact."  *Hubbard v. Gen. Motors Corp.*, No. 95 CIV. 4362, 1996 WL 274018, at *7 (S.D.N.Y. May 22, 1996).  Conduct is materially misleading if it "would mislead 'a reasonable consumer acting reasonably under the circumstances.'"  *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 390 (E.D.N.Y. 2017) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)).  "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer."  *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995); *S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.*, 84 F.3d 629, 637 (2d Cir. 1996) (affirming dismissal of a GBL § 349 claim "[s]ince a reasonable consumer would not have been deceived or defrauded by [Defendant's] actions.").

As a general matter, mere puffery is not actionable under GBL sections 349 or 350 or a claim for fraudulent misrepresentation. *Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F. Supp. 2d 401, 405 (E.D.N.Y. 2004); *In re Scotts EZ Seed Litig.*, 2013 WL 2303727, at *11 (S.D.N.Y. May 22, 2013); *Hubbard*, 1996 WL 274018, at *7.  Puffery is defined as exaggerated general statements that make no specific claims on which consumers could rely.  *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 528 (S.D.N.Y. 2003).  For instance, in *Hubbard*, claims that certain automobiles were "like a rock, popular, and the most dependable, long-lasting trucks on the planet" were "generalized and exaggerated claims, which a reasonable consumer could not rely upon as statements of fact." *Hubbard*, 1996 WL 274018, at *7.  In *In re Scotts EZ Seed Litigation*, the Court found that the statements: "WaterSmart"; "Drought tolerant"; "Grows Anywhere! Guaranteed!"; "Makes the Most of Every Drop"; and "Grows in Tough Conditions! Guaranteed!" were merely puffery.  2013 WL 2303727, at *7.

Here, the statement "non-sticky - no flakes - crazy hold" on the Product's label is precisely the type of generalized, exaggerated claim that constitutes puffery.  *See Zaccagnino v. Nissan N. Am., Inc.*, 2015 WL 3929620, at *4 (S.D.N.Y. June 17, 2015), ("For example, describing internet service as 'blazing fast,' 'fastest, easiest,' 'High Speed Internet,' or 'Faster Internet' is puffery."), *overruling implied on other grounds,* 150 F.Supp.3d 287 (S.D.N.Y. 2015); *Avola v. La.-Pac. Corp.*, 991 F. Supp. 2d 381, 391-92 (E.D.N.Y. Jan. 14, 2014) ("General descriptions about the product . . . can constitute puffery." (citations and quotation marks omitted)). The same way that a consumer would understand that "Grows Anywhere! Guaranteed!" is not an absolute fact that EZ Seeds will grow in any condition, consumers would understand that "no flakes" is not a guarantee that the Product will never, under any conditions, produce flakes.  Instead, a reasonable consumer knows that certain variables, including climate and how he or she uses the product, could

10

impact a hair gel's performance. Accordingly, a reasonable consumer would not expect "non-sticky - no flakes - crazy hold" to be an absolute statement of fact on which he or she could rely. Instead, it is a general claim that amounts to non-actionable puffery. Plaintiff's claims under the GBL and for fraud and fraudulent misrepresentation should therefore be dismissed.

### C. **Plaintiff Fails to State a Claim for Unjust Enrichment (Count V)**

To state a claim for unjust enrichment under New York law, the plaintiff must plead that (1) the defendant has been enriched, (2) such enrichment took place at the plaintiff's expense, and (3) it is against equity and good conscience to permit the defendant to retain what the plaintiff seeks to recover. *Goel v. Ramachandran*, 111 A.D.3d 783, 791, 975 N.Y.S.2d 428, 437 (2d Dept. 2013). A claim for unjust enrichment "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon N.Y. Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012). "[A]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Id.* Under New York law, "[u]njust enrichment is an equitable claim that is unavailable where an adequate remedy at law exists." *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 Fed.Appx. 611, 613 (2d Cir. Nov. 24, 2010); *see also Price v. L'Oreal USA, Inc.*, No. 17 CIV. 0614(LGS), 2017 WL 4480887, at *5 (S.D.N.Y. Oct. 5, 2017) (dismissing unjust enrichment claim because the plaintiff's other claims were based on the same set of facts and same alleged misrepresentation that the product contained an ingredient that it did not actually contain); *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 568 (S.D.N.Y. 2016) (dismissing unjust enrichment claim because plaintiff failed to show it was not duplicative).

Federal courts sitting in New York routinely dismiss unjust enrichment claims where they merely duplicate claims under the GBL.  In *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 299 (S.D.N.Y. 2018), the Court dismissed an unjust enrichment claim because the facts pleaded to support it were "the exact same that form the basis of [the plaintiff's] GBL claims."  In *Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*, 148 F. Supp. 3d 285, 298 (S.D.N.Y. 2015), the court dismissed the unjust enrichment claim with prejudice because it was "based on identical facts as the Section 349 claim."  The same is true here: Plaintiff's unjust enrichment claim relies solely on the allegation that the Product was deceptively labeled and that the Plaintiff was injured through the payment of the Product's purchase price.

To put it a different way, Plaintiff's claim for unjust enrichment fails for the same reason his GBL claims fail: he has not suffered a cognizable injury.  An unjust enrichment claim is not viable as a matter of New York law where the plaintiff has not suffered an actual injury.  *See, e.g., Nordwind v. Rowland*, 584 F.3d 420, 434-35 (2d Cir. 2009) (affirming dismissal of unjust enrichment claim asserted by clients against law firm which represented them in proceedings seeking restitution for assets illegally confiscated from their aunt by the Nazi government; clients received the full value of the interest in the assets to which they were entitled under German law, regardless of law firm's alleged conflicts of interest); *Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 680 (S.D.N.Y. 2012) (dismissing unjust enrichment claim on Rule 12(b)(6) grounds for failure to plausibly allege actual injury; plaintiff had failed to allege harm from alleged inability to use gift card for "split transaction" where he could have obtained reimbursement of the full card balance simply by returning the card to one of the defendants).  Accordingly, Plaintiff's unjust enrichment claim should be dismissed.

### D. __Plaintiff Fails to Plead Fraud-Based Claims with the Requisite Particularity (Counts IV and VI)__

When alleging a fraud-based claim, "in conjunction with the facial plausibility standard of Rule 12(b)(6), Plaintiffs must satisfy the heightened pleading standard set forth in Rule 9(b)." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015). Significantly here, Rule 9(b) requires plaintiffs alleging fraud to adequately plead the defendant's mental state:  plaintiffs must allege facts that give rise to a "strong inference" of fraudulent intent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).  "[W]hile Rule 9(b) permits scienter to be demonstrated by inference, this must not be mistaken for license to base claims of fraud on speculation and conclusory allegations. An ample factual basis must be supplied to support the charges."  *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991).  Here, Plaintiff asserts claims for "fraudulent misrepresentation/concealment" (Count IV) and common law fraud (Count VI), both of which are subject to Rule 9(b).  *See Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 120 (E.D.N.Y. 2011); *Rodrigues v. Family Justice Centers*, No. 18-CV-6999 (JPO), 2019 WL 1988526, at *6 (S.D.N.Y. May 6, 2019) (common law fraud).

The only allegation in the Complaint that might be considered an attempt to plead scienter with any particularity are the references to publications that discuss PVP, a common ingredient in hair gels that allegedly produces flakes.  *See* Compl. ¶¶ 24-26.  However, this allegation is plainly insufficient to meet the heightened pleading standard of Rule 9(b).  In particular, the Complaint cites three obscure sources for the proposition that "PVP is known to produce flakes," but it lacks any plausible, particular, non-conclusory allegation that *Defendant* is aware that PVP causes flakes and nevertheless includes misleading representations on the Product's label.  *Cf. In re Welspun Litig.*, No. 16 CV 6792 (VB), 2019 WL 2174089, at *16 (S.D.N.Y. May 20, 2019) (dismissing fraud claims as "far too general to generate a strong inference of intent to defraud" even though

13

Plaintiff pled facts showing that retailer was specifically warned about potential fraud).  In any event, the equivocal and conditional language in the passages Plaintiff cites merely suggests the possibility that hair gel containing PVP may cause flaking. *See* Compl. ¶ 24-26 (all three sources merely state that PVP "can" or "has a tendency" to flake and only when in dry and/or cold weather). These allegations are too vague and unspecific to Defendant to plausibly allege scienter. Consequently, Plaintiffs claims for fraudulent misrepresentation[3] and common law fraud should be dismissed.

**POINT 2**

**<u>PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED
BECAUSE HE LACKS STANDING</u>**

Plaintiff's claims for injunctive relief should be dismissed for lack of standing under Federal Rule of Civil Procedure 12(b)(1).  To establish standing to pursue a claim for injunctive relief, a plaintiff must adequately plead a "real or immediate threat" of injury. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983)).  If a consumer will not purchase a product in the future, he does not have standing to seek injunctive relief.  *See Kommer v. Bayer Consumer Health,* 710 F. App'x 43, 44 (2d Cir. 2018) (summary order); *DaCorta v. AM Retail Grp., Inc.*, No. 16-CV-01748 (NSR), 2018 WL 557909, at *4 (S.D.N.Y. Jan. 23, 2018) (holding that the plaintiff's claim that she would not have purchased the product "but for" the alleged misrepresentation "is effectively a concession that she does not intend to purchase the product in the future"); *Izquierdo v. Mondelez Int'l, Inc.*,

---

[3] To the extent Plaintiff is alleging fraudulent *concealment*, his claim fails because a claim for fraudulent concealment requires a special relationship between the parties, such that the defendant had a duty to disclose material information.  *See Lerner*, 459 F.3d at 291-92 (noting that "such a duty usually arises in the context of business negotiations where parties are entering a contract"). The Complaint fails to allege that Defendant had any such duty.

No. 16-CV-04697 (CM), 2016 WL 6459832, at *5 (S.D.N.Y. Oct. 26, 2016) (dismissing claims for injunctive relief in a slack-fill case where plaintiff alleges that he will not purchase the product again in its allegedly misleading packaging); *Spiro v. Healthport Techs., LLC*, 73 F. Supp. 3d 259, 270-71 (S.D.N.Y. 2014) (noting that past exposure to illegal conduct cannot sustain a plausible inference that the plaintiff is "in danger of being wronged again").

Similarly here, Plaintiff claims that he would not have purchased the Product but for the alleged misrepresentation on the label (Compl. ¶ 7); that if he encountered the product in the future he could not rely on the truthfulness of its label absent changes (Compl. ¶17); and that he would not have purchased the Product had he known about the misrepresentation on the label (Compl. ¶ 94).   Not only does Plaintiff fail to allege any "real or immediate threat" of future injury, he affirmatively pleads that he will not purchase the product with its offending packaging again.   Since he expressly will not purchase the Product in the future, Plaintiff lacks standing to seek injunctive relief.  *See Hidalgo*, 148 F. Supp. 3d at 296 (dismissing claims for injunctive relief with prejudice where complaint lacks any allegations that plaintiff intends to purchase the product again and any amendment would be futile because the complaint indicates that plaintiff will refrain from purchasing the product even if court issued an injunction).   Accordingly, Plaintiffs' claims for injunctive relief should be dismissed.  *See* Compl., Counts I and III.

## POINT 3

## PLAINTIFF'S CLASS CLAIMS SHOULD BE STRICKEN

Under Rule 12(f), the Court may strike from a pleading any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  Rule 23(c)(1) directs district courts to determine "as soon as practicable" whether the proposed class satisfies the class certification requirements, and Rule 23(d)(1)(D) authorizes the Court to "require that

15

the pleadings be amended to eliminate allegations about representation of absent persons." Fed.

R. Civ. P. 23(c)(1), 23(d)(1)(D); *Davito v. Amtrust Bank*, 743 F.Supp.2d 114, 115  (E.D.N.Y.

2010) (granting motion to strike class allegations).

Although courts in the Second Circuit tend to delay consideration of class claims, there is

no bar to striking class claims prior to discovery or motions to certify a class,[4] and courts in other

districts routinely strike class claims at an earlier juncture.  *See Gen. Tel. Co. v. Falcon*, 457 U.S.

147, 160 (1982) ("[s]ometimes the issues are plain enough from the pleadings" to show that a class

should not be certified); *Wright v. Family Dollar, Inc.*, No. 10 C 4410, 2010 WL 4962838, at *1

(N.D. Ill. Nov. 30, 2010) ("when the defendant advances a legal argument based on the pleadings,

discovery is not necessary for the court to evaluate whether a class action may be maintained");

*Thompson v. Merck & Co.*, 2004 WL 62710, at *2 (E.D. Pa. Jan. 6, 2004) (rejecting argument that

court may not grant motion "to strike class allegations from the complaint until after plaintiffs have

filed a motion for class certification"); *Tietsworth v. Sears*, No. 720 F.Supp.2d 113, 1146  (N.D.

Cal. 2010) (holding that "this Court has authority to strike class allegations prior to discovery if

the complaint demonstrates that a class action cannot be maintained"); *Clark v. McDonald's Corp.*,

213 F.R.D. 198, 205 n.3 (D.N.J. 2003) (motion to strike class allegations are appropriate "where

the complaint itself demonstrates that the requirements for maintaining a class action cannot be

met"); *Ross-Randolph v. Allstate Ins.*, No. DKC-99-3344, 2001 WL 36042162, at *4 (D. Md. May

---

[4] *See, e.g. Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 462 (S.D.N.Y. 2013) (holding that "a party may move to strike class claims even before discovery"); *Luciano v. Eastman Kodak Co.*, No. 05-CV-6463T, 2006 WL 1455477, at *3 (W.D.N.Y. May 25, 2006)  ("Although plaintiff has not yet moved for class certification in this case, a court may decide the issue of certification based on a review of the complaint prior to a party's motion to certify the proposed class."); *PFT of Am., Inc. v. Tradewell, Inc.*, No. 98 CIV. 6413 (RPP), 1999 WL 179358, at *2 (S.D.N.Y. Mar. 31, 1999) (striking class claims at the pleading stage).

11, 2001) (granting motion to strike class allegations and holding that "[i]n determining whether a party complies with Rule 23, a court does not have to wait until class certification is sought").

A proposed class must satisfy several "rigorous" standards. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). In this case, the proposed classes in the Complaint cannot be certified for several incurable reasons.

## A. The Putative Class Members Do Not Have Standing

First and foremost, a "class must . . . be defined in such a way that anyone within it would have standing." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006). To achieve standing, a plaintiff must have suffered an "injury in fact" that is "distinct and palpable," the injury must be fairly traceable to the challenged action, and the injury must be likely redressable by a favorable decision. *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). A proposed class is facially "overbroad if it includes significant numbers of consumers who have not suffered any injury or harm." *Loreto v. Procter & Gamble Co.*, No. 1:09-cv-815, 2013 U.S. Dist. LEXIS 162752, at *12 (S.D. Ohio Nov. 15, 2013); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (affirming denial of class certification where the proposed class "could include millions . . . who have no grievance"). Plaintiff has drawn our attention to the Product reviews, but these reviews actually demonstrate that the proposed class cannot meet the standard explained in *Denny* because the bulk of putative class members have not been injured.

In this case, discovery is not needed to reveal that Plaintiff's proposed class contains members who do not have standing. Specifically, the proposed class and subclass includes *all* purchasers of the Product, but the overwhelming majority of purchasers are satisfied with the Product and have not complained about flaking. In his Complaint, Plaintiff claims that online consumer reviews demonstrate that "Plaintiff's negative experiences with the Product were not

uncommon[.]"  Compl. ¶ 23.  A complete and accurate picture of the consumer reviews of the Product demonstrate that the majority of consumers are satisfied with the Product, received the benefit of their bargain, and have not suffered an injury: as of this filing, the Product has a total of 704 reviews and 4.3 out of 5 stars on Amazon.com, and on Walmart.com, the Product has 165 reviews and 4.5 out of 5 stars.[5]  *See Spagnola v. The Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (plaintiff's receipt of adequate insurance coverage was fatal to his overpayment claim); *Sokoloff v. Town Sports Int'l, Inc.*, 778 N.Y.S.2d 9, 10-11 (1st Dep't 2004) (dismissing plaintiff's claim where he received the benefits set forth in his gym contract).

In light of the abundance of contradicting information, Plaintiff's argument that the online reviews lend plausibility to his claims (Compl. ¶ 23) is not only uncompelling, it should be outright rejected by this Court.  *See James L. Turkle Trust v. Wells Fargo & Co.*, 602 Fed. App'x. 360, 362 (9th Cir. 2015*); In re Vanarthos*, 445 B.R. 257, 261 (Bankr. S.D.N.Y. 2011) (holding that, "[i]n deciding a motion to dismiss, the court may consider documents that are integral to the complaint[;] [w]hen documents contain statements that contradict allegations in a complaint, the documents control and the court need not accept as true the allegations in the complaint to the extent they are

---

[5] Plaintiff attached cherry-picked portions of consumer reviews to his Complaint.  The Court can, and should, consider the complete document upon which Plaintiff relies, namely all of the Amazon reviews associated with the Product.  *See Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (holding that a court may consider the facts alleged in the complaint, together with any statements or documents incorporated in it by reference, as well as documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit); *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991) (holding that a plaintiff cannot "evade a properly argued motion to dismiss simply because [the] plaintiff has chosen not to attach [a document on which he or she relies in bringing suit] to the complaint or to incorporate it by reference.").  Accordingly, we have attached a true and correct copy of the complete set of 704 Amazon reviews and 165 Walmart reviews respectively.  Smith Cert., Ex. B and C (the reviews are in date order with the 8 specific reviews attached by Plaintiff as Complaint Exhibit B highlighted for the Court's convenience.

contradicted"); *see also Tello v. Bank of Am. N.A*., 2014 WL 99299, at *4 (D.Nev. Jan. 3, 2014) (finding that the plaintiff failed to state a cognizable claim for intentional misrepresentation, where the documents provided to the court appeared to contradict the plaintiff's allegations); *Saravia v. Select Portfolio Serv., Inc.*, 2014 WL 2865798, at *7 (D.Md. June 23, 2014) ("With contradictory factual allegations, the Court cannot find a claim with 'facial plausibility' under the standards as set forth in [*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)]." (citation omitted)).

Here, because the putative class contains hundreds of consumers—in the reviews cited by Plaintiff alone—who will have suffered no injury and thus have no standing, the Plaintiff's class claims should be stricken.

## B. The Putative Classes Cannot Satisfy Rule 23

For similar reasons, the breadth of the class definition is also fatal to class certification on typicality, predominance, and ascertainably grounds under Rule 23.

First, the requirement for typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010). Based on the allegations of the Complaint alone, it is clear that Plaintiff's claims will not be typical. Simply put, consumers, like Plaintiff, with complaints of flaking are heavily outweighed by consumers who had positive experiences with the Product. Thus, Plaintiff's claims are not typical of the class.

Second, "to find predominance, a Court must consider the elements of each cause of action, and determine whether those elements can be satisfied by common, class-wide proof." *Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498, 509 (S.D.N.Y. 2011). In particular, "[c]ommon questions predominate only if plaintiffs can show that those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof." *Id.* In *Oscar*,

the Court found that common issues did not predominate claims involving defective tires, where Plaintiff had not identified a common defect. *Id.* at 511 ("Even if the plaintiffs were to show that the Goodyear [tires] suffered from a common defect, they would still need to demonstrate that this defect caused each class member's [tires] to puncture."). Here, Plaintiff's own theory that PVP causes flaking hinges on variables such as individual use and climate[6], thus the claims are subject to individualized proof.

Moreover, Plaintiff cannot establish predominance because, even assuming Plaintiff has suffered some injury, most putative class members have not. Where "the majority of the putative class members have no legally recognizable claim, the action necessarily metastasizes into millions of individual claims," which "is fatal to a showing of predominance of common questions." *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 603 (S.D.N.Y. 1982) (finding, in a putative class action for breach of the implied warranty of merchantability based on a purported defect in tires, that the majority of putative class members had not experienced a defect). As a result, Plaintiff's class claims should be stricken because individual issues will predominate.

Finally, Rule 23 contains an implied requirement of ascertainability. *See In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 30, 44 (2d Cir. 2006). For a class to be ascertainable, the class definition must be based on "objective criteria," and it must be "administratively feasible" to identify class members without conducting "a mini-hearing on the merits of each case." *Charron v. Pinnacle Grp. N.Y. L.L.C.*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010) (internal quotation marks and citation omitted). That standard will be impossible to satisfy here, where only a minority of

---

[6] "Clearly, a product which relies on PVP for its styling properties is likely to yield varying results depending upon local climate and individual handling of the hair once the film is dry." Tonya Mckay Becker, White, Flaky Hair Gel and Other Misadventures, NaturallyCurly.com, Feb. 3, 2001, https://www.naturallycurly.com/curlreading/products-ingredients/white-flaky-hair-gel-and-other-misadventures (cited by Plaintiff at Compl. ¶25, n.2).

consumers experienced flaking or will allege that they did not receive the benefit of their bargain, and locating aggrieved class members will require the Court to conduct mini-hearings on consumers' use of the Product.

For the reasons set forth above, it is apparent at this stage of the case that Plaintiff's class claims will not survive class certification.  In the interests of efficiency, the Court should strike the class claims now to the extent any claims survive Henkel's Motion to Dismiss.

## **CONCLUSION**

Henkel respectfully requests that all of the claims in the Complaint be dismissed with prejudice.  In the alternative, the Plaintiff's class claims should be stricken.

Dated: New York, New York
       June 7, 2019

GREENBERG TRAURIG, LLP

By: */s/ Keith E. Smith*
    Keith E. Smith
    Jaclyn DeMais
    200 Park Avenue
    New York, New York 10166
    (212) 801-9200
    smithkei@gtlaw.com
    demaisj@gtlaw.com

    *Attorneys for Defendant,*
    *Henkel Corporation.*