UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ABEL DURAN,<br>*On behalf of himself and all others*<br>*similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>HENKEL CORPORATION,<br><br>Defendants. | 19-CV-02794 (PAE)<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
AND/OR TO STRIKE THE CLASS CLAIMS**

Keith E. Smith
Jaclyn DeMais
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York 10166
(212) 801-9200
(212) 801-6400 (fax)

*Attorneys for Defendant,*
*Henkel Corporation*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ........................................................................................................3

    A.    Allegations of the FAC ...............................................................................3

    B.    Class Allegations ........................................................................................5

    C.    Causes of Action ........................................................................................5

    D.    Alleged Damages .......................................................................................6

ARGUMENT .............................................................................................................................6

    POINT 1      PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF ........6

    A.    The Allegedly Misleading Statement is Non-Actionable Puffery (Counts I-IV) .........................................................................................................7

    B.    Plaintiff Fails to Adequately Plead Injury in Support of His Claims Under New York General Business Law Sections 349 And 350 (Counts I-III)...............11

    C.    Plaintiff's Allegation of Scienter is Insufficient to State a Claim for Common Law Fraud (Count IV)...........................................................................14

    POINT 2    PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED BECAUSE HE LACKS STANDING ............................................16

    POINT 3    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE ...............18

    POINT 4    PLAINTIFF'S CLASS CLAIMS SHOULD BE STRICKEN..............................19

    A.    The Putative Class Members Do Not Have Standing............................................21

    B.    The Putative Classes Cannot Satisfy Rule 23 .......................................................23

CONCLUSION.........................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................7

*Bell Atl. Corp v. Twombly*,
    550 U.S. 544 (2007)..........................................................................6, 7, 12

*Bowring v. Sapporo U.S.A., Inc.*,
    234 F. Supp. 3d 386 (E.D.N.Y. 2017) ......................................................8

*Brown v. Kelly*,
    609 F.3d 467 (2d Cir. 2010)...................................................................23

*Charron v. Pinnacle Grp. N.Y. L.L.C.*,
    269 F.R.D. 221 (S.D.N.Y. 2010) ...........................................................24

*Clark v. McDonald's Corp.*,
    213 F.R.D. 198 (D.N.J. 2003) ................................................................20

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013)............................................................................20

*Cuoco v. Moritsugu*,
    222 F.3d 99 (2d Cir. 2000)......................................................................18

*DaCorta v. AM Retail Grp., Inc.*,
    No. 16-CV-01748 (NSR), 2018 WL 557909 (S.D.N.Y. Jan. 23, 2018)............11, 16

*Daniel v. Tootsie Roll Indus.*,
    LLC, No. 17 CIV. 7541 (NRB), 2018 WL 3650015 (S.D.N.Y. Aug. 1, 2018)......17

*Davito v. Amtrust Bank*,
    743 F.Supp.2d 114 (E.D.N.Y. 2010) ......................................................19

*Denenberg v. Rosen*,
    71 A.D.3d 187, 897 N.Y.S.2d 391 (1st Dept. 2010).................................7

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006).....................................................................21

*Feinstein v. Firestone Tire & Rubber Co.*,
    535 F. Supp. 595 (S.D.N.Y. 1982) .........................................................24

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013)...........................................................................................8

*Frank v. DaimlerChrysler Corp.*,
292 A.D.2d 118, 741 N.Y.S.2d 9 (1st Dept. 2002)..................................................11

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
No. 12-MD-2413 RRM RLM, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ...............16, 21

*Gen. Tel. Co. of the Sw. v. Falcon*,
457 U.S. 147 (1982)...............................................................................................19, 20

*Greene v. Gerber Prod. Co.*,
262 F. Supp. 3d 38 (E.D.N.Y. 2017) .......................................................................12

*Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*,
148 F. Supp. 3d 285 (S.D.N.Y. 2015).....................................................................17

*Hubbard v. Gen. Motors Corp.*,
No. 95 CIV. 4362, 1996 WL 274018 (S.D.N.Y. May 22, 1996)...............................8

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*,
936 F.2d 759 (2d Cir. 1991)....................................................................................22

*In re Initial Pub. Offerings Sec. Litig.*,
471 F.3d 24 (2d Cir. 2006).......................................................................................24

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
62 F.3d 69 (2d Cir. 1995).........................................................................................12

*Izquierdo v. Mondelez Int'l, Inc.*,
No. 16-CV-04697 (CM), 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) .........................12, 17

*James L. Turkle Trust v. Wells Fargo & Co.*,
602 Fed. App'x. 360 (9th Cir. 2015) .......................................................................22

*Kassman v. KPMG LLP*,
925 F. Supp. 2d 453 (S.D.N.Y. 2013).....................................................................20

*Kommer v. Bayer Consumer Health*,
710 F. App'x 43 (2d Cir. 2018) ...............................................................................16

*Landsman & Funk PC v. Skinder-Strauss Assocs.*,
640 F.3d 72 (3d Cir. 2011).......................................................................................19

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006).....................................................................................15

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015)...................................................................15

*Loreto v. Procter & Gamble Co.*,
    No. 1:09-cv-815, 2013 U.S. Dist. LEXIS 162752 (S.D. Ohio Nov. 15, 2013) ......................21

*Luciano v. Eastman Kodak Co.*,
    No. 05-CV-6463T, 2006 WL 1455477 (W.D.N.Y. May 25, 2006) ........................20

*Marshall v. Hyundai Motor Am.*,
    No. 12 CIV. 3072 (CM), 2019 WL 2678023 (S.D.N.Y. June 14, 2019)..............12

*McCarthy v. Dun & Bradstreet Corp.*,
    482 F.3d 184 (2d Cir. 2007)...................................................................18

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016)...................................................................16

*O'Brien v. Nat'l Prop. Analysts Partners*,
    936 F.2d 674 (2d Cir. 1991)...................................................................15

*Oscar v. BMW of N. Am., LLC*,
    274 F.R.D. 498 (S.D.N.Y. 2011) .............................................................23

*Oshana v. Coca-Cola Co.*,
    472 F.3d 506 (7th Cir. 2006) .................................................................21

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20, 623 N.Y.S.2d 529 (1995) ................................................7, 8

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
    347 F. App'x 617 (2d Cir. 2009) .............................................................18

*Pelman v. McDonald's Corp.*,
    237 F. Supp. 2d 512 (S.D.N.Y. 2003)........................................................8

*PFT of Am., Inc. v. Tradewell, Inc.*,
    No. 98 CIV. 6413 (RPP), 1999 WL 179358 (S.D.N.Y. Mar. 31, 1999)..............20

*Rapoport v. Asia Elecs. Holding Co.*,
    88 F. Supp. 2d 179 (S.D.N.Y. 2000)........................................................12

*Rodrigues v. Family Justice Centers*,
    No. 18-CV-6999 (JPO), 2019 WL 1988526 (S.D.N.Y. May 6, 2019) ...................15

*Rodriguez v. It's Just Lunch, Int'l*,
    No. 07CIV9227(SHS)(KNF), 2010 WL 685009 (S.D.N.Y. Feb. 23, 2010) .........................11

*Ross-Randolph v. Allstate Ins.*,
No. DKC-99-3344, 2001 WL 36042162 (D. Md. May 11, 2001)..........................................20

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000)..........................................................................................22

*Ruffolo v. Oppenheimer & Co.*,
987 F.2d 129 (2d Cir. 1993)..........................................................................................18

*S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.*,
84 F.3d 629 (2d Cir. 1996)............................................................................................8

*In re Sanofi Sec. Litig.*,
87 F. Supp. 3d 510 (S.D.N.Y. 2015)..............................................................................18

*Saravia v. Select Portfolio Serv., Inc.*,
2014 WL 2865798 (D.Md. June 23, 2014)........................................................................22

*In re Scotts EZ Seed Litig.*,
No. 12 CV 4727 VB, 2013 WL 2303727 (S.D.N.Y. May 22, 2013) ....................................8, 9

*Serrano v. Cablevision Sys. Corp.*,
863 F. Supp. 2d 157 (E.D.N.Y. 2012) ..............................................................................9

*Silverman v. Teamsters Local 210 Affiliated Health & Ins. Fund*,
761 F.3d 277 (2d Cir. 2014)..........................................................................................7

*Small v. Lorillard Tobacco Co.*,
94 N.Y.2d 43, 698 N.Y.S.2d 615 (1999) ..........................................................................11

*Sokoloff v. Town Sports Int'l, Inc.*,
778 N.Y.S.2d 9 (1st Dep't 2004) ....................................................................................22

*Spagnola v. The Chubb Corp.*,
574 F.3d 64 (2d Cir. 2009)............................................................................................22

*Spiro v. Healthport Techs., LLC*,
73 F. Supp. 3d 259 (S.D.N.Y. 2014)..........................................................................17, 18

*Tello v. Bank of Am. N.A.*,
2014 WL 99299 (D.Nev. Jan. 3, 2014)............................................................................22

*Thompson v. Merck & Co.*,
2004 WL 62710 (E.D. Pa. Jan. 6, 2004)..........................................................................20

*Tietsworth v. Sears*,
No. 720 F.Supp.2d 113 (N.D. Cal. 2010) ........................................................................20

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
  No. 06CIV.14245, 2007 WL 1138879 (S.D.N.Y. Apr. 16, 2007)............................................9

*In re Vanarthos*,
  445 B.R. 257 (Bankr. S.D.N.Y. 2011)....................................................................................22

*Verizon Directories Corp. v. Yellow Book USA, Inc.*,
  309 F. Supp. 2d 401 (E.D.N.Y. 2004) ......................................................................................8

*In re Welspun Litig.*,
  No. 16.................................................................................................................................16

*Wright v. Family Dollar, Inc.*,
  No. 10 C 4410, 2010 WL 4962838 (N.D. Ill. Nov. 30, 2010)..............................................20

**<u>Rules</u>**

Fed. R. Civ. P. 12(f)................................................................................................................19

Fed. R. Civ. P. 23(c)(1)..........................................................................................................19

Fed. R. Civ. P. 23(d)(1)(D) ....................................................................................................19

**<u>Other Authorities</u>**

https://www.cosmeticsandtoiletries.com/formulating/category/haircare/Multifunct
  ional-Performance-from-a-New-Generation-Polymer-274506271.html (last
  accessed July 15, 2019)............................................................................................................4

*https://www.universalbeauty.com/shop/VIA_NATURAL?limit=100*............................................13

Tonya Mckay Becker, White, Flaky Hair Gel and Other Misadventures,
  NaturallyCurly.com, Feb. 3, 2001,
  https://www.naturallycurly.com/curlreading/products-ingredients/white-flaky-
  hair-gel-and-other-misadventures ...........................................................................................24

Defendant Henkel Corporation ("Henkel") submits this Memorandum of Law in support of its motion to dismiss with prejudice the First Amended Complaint (the "FAC") pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure and/or to strike Plaintiff's class claims pursuant to Rules 12(f) and 23(b)(3) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff applied gel to his hair and, some time later, noticed white and grayish flakes. Based on that fact, and not much more, he now seeks to represent a nationwide class of all purchasers of the hair gel, seeking millions of dollars in damages and injunctive relief, all because the gel states "no flakes" on the label.  This statement is taken out of context.  The front of the label actually refers to the product as an "invincible styling gel" and then lists "non-sticky - no flakes - crazy hold."  The back of the label provides the following description:

> This gel's hold is no joke! So put it down and slowly back away if you are not up for our strongest gel hold ever!
>
> This non-sticky, no-flake formula is powered by a high-tech styling agent - we call it Alpha XTR. Call it what you want, it lets you take your hair to new heights. Or do your own thing and cement your individual style.
>
> And when the party comes to an end, easily un-glue with a little shampoo.
>
> Go ahead - style away!

*See* Certification of Keith E. Smith ("Smith Cert."), Exhibit "A."  Taken in the context of the hair gel's complete label, the references to no flakes or no-flake formula are clearly mere puffery.  They are not a guaranty that no user, ever, under any circumstance, applied to any hair, under any conditions will see a flake.

Plaintiff's theory is that the Schwarzkopf got2b ultra glued Invincible Styling Gel (the "Product") contains a chemical ingredient that is common in hair gels, but that produces flakes in

dry and/or cold climates.  Consequently, Henkel is accused of fraud, intentionally misleading consumers, and false advertising.  To make his claims seem more plausible, Plaintiff relies on cherry-picked consumer complaints, glossing over the fact that most consumers are overwhelmingly satisfied with the Product and have not complained of any deception or flaking. Accordingly, the vast class of aggrieved consumers that Plaintiff purports to represent does not exist.

The FAC should be dismissed for several reasons.  First, the allegedly misleading statement is non-actionable puffery.  Considering the language on the label as a whole, no reasonable consumer would rely on the "non-sticky - no flakes - crazy hold" language when purchasing the Product. Second, Plaintiff fails to adequately allege how the purported misrepresentation on the label amounts to a legally cognizable injury.  Assuming it is true that Plaintiff noticed flakes after using the Product, the FAC still fails as a matter of law because he does not allege sufficient facts to establish a plausible injury.  Third, Plaintiff expressly alleges in the FAC that he will not purchase this Product again.  Accordingly, under well-established law in this Circuit, he lacks standing to seek injunctive relief.  Fourth, Plaintiff fails to state a claim because he fails to adequately plead that Defendant had the requisite fraudulent intent.  Moreover, the Court should dismiss the FAC with prejudice because this motion asserts substantially the same arguments as Defendant's motion to dismiss Plaintiff's original Complaint, so permitting Plaintiff an opportunity to amend is futile.

Finally, to the extent any of Plaintiff's claims survive Henkel's motion to dismiss, his class claims should be stricken from the FAC.  Although motions to strike at the pleading stage are rarely granted in the Second Circuit, this case presents an appropriate opportunity for conserving judicial resources and striking class claims that have no chance of surviving class certification.  As

will become apparent, the class Plaintiff seeks to represent consists mainly of consumers who did not experience flaking, suffered no ascertainable injury and have no standing. Therefore, the putative class fails to satisfy Rule 23, if the Court even reaches that analysis.

Accordingly, for the reasons set forth more fully below, the Court should dismiss the FAC in its entirety.  In the alternative, the Court should strike Plaintiff's class claims now. Plaintiff's proposed class does not have standing and a class will never be certified, no matter what discovery reveals, so allowing the class claims to survive will lead to a waste of judicial resources.

## STATEMENT OF FACTS

### A. Allegations of the FAC

The FAC is based on one simple allegation: that the Product is labeled as producing "no flakes" when it does in fact produce flakes. FAC ¶ 1-2.  Plaintiff claims that he and the class members viewed the label and relied on the representation that it did not produce flakes when deciding to purchase the Product.  FAC ¶ 3.

The factual allegations underpinning Plaintiff's claim are brief.  Plaintiff alleges that on November 21, 2018, he purchased a six-ounce bottle of the Product at a CVS in Queens.  FAC ¶ 17. He alleges that he paid $7.99, but he does not attach a receipt.  FAC ¶ 17.  Plaintiff claims that he purchased the Product "to avoid the gel flakes that are commonly produced by other hair gels." FAC ¶ 21.  He alleges that on the same day that he purchased the Product, he showered, dried his hair, and applied two drops of the Product to his hair, evenly distributing it to flatten loose hairs. FAC ¶ 22. At some point later, after the gel had dried, he noticed white and grayish flakes.  *Id*.

To bolster the claims in the FAC, Plaintiff selected eleven out of 704 consumer reviews from Amazon.com (less than 2% of all reviews) and two out of 165 reviews on Walmart.com (1.2% of all reviews) and attached those reviews to the FAC.  FAC ¶ 24, Ex. B.   However, the

Court can and should consider the whole of each document, namely the complete universe of Product reviews from which the reviews chosen by Plaintiff are taken.  These documents show that consumers were overwhelmingly satisfied with the Product and suffered no injury.

Even the product reviews that Plaintiff cites in the FAC do not support his claims:

- One review quoted by Plaintiff acknowledges "other reviews said it doesn't get flaky."
- One review states: "I wanted to like it as much as others but it is not for my family."
- One review referenced the skin on his or her scalp flaking (not the Product), but believed the Product caused physical irritation of the reviewer's scalp, which is not something that Plaintiff claims in the FAC.
- One reviewer referenced that he "got some on my hair" as if by accident and then comments on using the Product to hold down a wig, an application for which the Product is not intended to be used and a use that is not consistent with Plaintiff's claims.

FAC ¶ 24.  Plaintiff states that "[t]hese reviews demonstrate that Plaintiff's experiences with the Product are hardly unique to him." FAC ¶ 25. Henkel would submit that what these reviews demonstrate is that Plaintiff's experience with the Product was not common with anyone, let alone all purchasers nationwide.

In addition, Plaintiff claims that the Product contains poly N-vinyl-pyrrolidone ("PVP"), a water-soluble polymer commonly found in hair gel.  FAC ¶ 30.  Plaintiff quotes select blog posts from "NaturallyCurly.com" and "Conditioning Agents for Hair and Skin," which claim that PVP is prone to flaking in cold and/or dry weather.  FAC ¶ 30-31.  He also cites "Sponsored Branded Content" from BASF Corporation on cosmeticsandtoiletries.com, which "postulate[s]" that Luviset One, a BASF water-based polymer, has properties that "are important for high bending stiffness and low flaking after combing."  FAC ¶ 34.[1]

---

[1] https://www.cosmeticsandtoiletries.com/formulating/category/haircare/Multifunctional-Performance-from-a-New-Generation-Polymer-274506271.html (last accessed July 15, 2019) (cited by Plaintiff at FAC ¶ 34).  *See* Smith Cert., Ex. C.

B. **Class Allegations**

Plaintiff purports to bring his claims on behalf of a class consisting of "[a]ll persons or entities who purchased the Product in the United States during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ('the Nationwide Class')."  FAC ¶ 48. In the alternative, Plaintiff "seeks to represent a class consisting of: All persons or entities who purchased the Product in New York during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the New York Class").  FAC ¶ 49.  The rest of Plaintiff's class allegations consist of boilerplate recitation of the class action standards.  He claims that "the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through the appropriate discovery[.]" FAC ¶ 52.  He claims without any support or justification (and incorrectly) that "[o]ther members of the Class may be identified from records maintained by Defendants[.]" *Id*.  In addition, he alleges, in a conclusory fashion, that the Class members "sustained similar injuries," FAC ¶ 53, and that "[a] class action is superior to other available methods for the fair and efficient adjudication of this controversy."  FAC ¶ 53. Furthermore, Plaintiff claims that there are common questions of law and fact, which "predominate over any questions solely affecting individual members of the Class."  FAC ¶ 56.

C. **Causes of Action**

Plaintiff asserts four causes of action[2]: (1) injunctive relief for violation of the New York Deceptive and Unfair Trade Practices Act, Section 349; (2) damages for violations of the New York Deceptive and Unfair Trade Practices Act, Section 349; (3) damages and injunctive relief for violations of the New York Deceptive and Unfair Trade Practices Act, Section 350 and 350-a(1);

---

[2] Each cause of action is "brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class."

and (4) common law fraud.  On top of these claims, and even though there is only a single plaintiff, who alleges to be a citizen of New York, Plaintiff alleges violations of the consumer protection statutes enacted in each and every state and the District of Columbia.  FAC ¶ 11.

### D.  Alleged Damages

Plaintiff claims that he and Class members were "injured when they paid the full price of the Product and received something inferior to what was warranted to them[.]" FAC ¶ 39.  Moreover, Plaintiff claims that the Product "was worth far less" than what he paid for it.  FAC ¶ 18.  To support his price premium theory of damages, Plaintiff cites three other hair gels that are allegedly cheaper than the Product he purchased.  FAC ¶ 41.  Plaintiff claims that he "suffered economic harm in an amount up to the full amount of his purchase price[.]" FAC ¶ 18.  Furthermore, Plaintiff states that he "would not have purchased [the Product], or would only have been willing to pay significantly less for it" had he known that it produces flakes, FAC ¶ 17, and that if he encountered the Product in the future "he could not rely on the truthfulness of the representations . . ., absent corrective changes to its packaging." FAC ¶ 18.

Accordingly, Plaintiff seeks restitution and disgorgement, compensatory damages, actual and/or statutory damages, injunctive relief, interest, and attorneys' fees and costs.  FAC Prayer for Relief.

### ARGUMENT

### POINT I
### PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF

To survive a motion to dismiss for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007).  Although all allegations of material fact are taken as true and construed in the light most

favorable to the nonmoving party, those factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Silverman v. Teamsters Local 210 Affiliated Health & Ins. Fund*, 761 F.3d 277, 284 (2d Cir. 2014).

A complaint must provide "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Thus, where the facts alleged do not permit the court to infer more than "the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 679.

### A.  **The Allegedly Misleading Statement is Non-Actionable Puffery (Counts I-IV)**

To state a claim for violation of GBL section 349, Plaintiff must allege that (1) Defendant's challenged actions are directed to consumers; (2) Defendant had engaged in an act or practice that is deceptive or misleading in a material way; and (3) Plaintiff has been injured by reason of such deceptive or misleading acts. *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25-26, 623 N.Y.S.2d 529, 532-33 (1995). The elements of a claim for violation of GBL section 350 are identical to those for violation of GBL section 349, except that the subject "act or practice" must consist of allegedly false advertising. *Denenberg v. Rosen*, 71 A.D.3d 187, 194, 897 N.Y.S.2d 391, 395 (1st Dept. 2010). Plaintiff's GBL claims should be dismissed because he fails to adequately allege the second or third elements of a GBL section 349 or 350 claim, and his common law fraud claim is subject to dismissal on similar grounds.

The second element of a claim under GBL sections 349 and 350 requires that the defendant's actions were "misleading in a material way." *In re Scotts EZ Seed Litig.*, No. 12 CV 4727 VB, 2013 WL 2303727, at *11 (S.D.N.Y. May 22, 2013) (citing *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)). Similarly, "[i]n order to state a claim for fraud or negligent misrepresentation, plaintiff must allege, inter alia, the misrepresentation of a material fact." *Hubbard v. Gen. Motors Corp.*, No. 95 CIV. 4362, 1996 WL 274018, at *7 (S.D.N.Y. May 22, 1996). Conduct is materially misleading if it "would mislead 'a reasonable consumer acting reasonably under the circumstances.'" *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 390 (E.D.N.Y. 2017) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)). "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995); *S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.*, 84 F.3d 629, 637 (2d Cir. 1996) (affirming dismissal of a GBL § 349 claim "[s]ince a reasonable consumer would not have been deceived or defrauded by [Defendant's] actions.").

As a general matter, mere puffery is not actionable under GBL sections 349 or 350 or a claim for fraud. *Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F. Supp. 2d 401, 405 (E.D.N.Y. 2004); *In re Scotts EZ Seed Litig.*, 2013 WL 2303727, at *11 (S.D.N.Y. May 22, 2013); *Hubbard*, 1996 WL 274018, at *7. Puffery is defined as exaggerated general statements that make no specific claims on which consumers could rely. *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 528 (S.D.N.Y. 2003). For instance, in *In re Scotts EZ Seed Litigation*, the Court found that the statements: "WaterSmart"; "Drought tolerant"; "Grows Anywhere! Guaranteed!"; "Makes the

Most of Every Drop"; and "Grows in Tough Conditions! Guaranteed!" were mere puffery.  2013 WL 2303727, at *7.  In *Serrano v. Cablevision Sys. Corp.*, 863 F. Supp. 2d 157, 167 (E.D.N.Y. 2012), the court held that Cablevision's representations that it "provides 'High Speed Internet,' 'Faster Internet,' and 'blazing fast speed' and that 'Optimum Online's lightning-fast Internet access takes the waiting out of the Web,'" constitute non-actionable puffery under the GBL and common law fraud.

Here, the statement "non-sticky - no flakes - crazy hold" on the Product's label is precisely the type of generalized, exaggerated claim that constitutes puffery.  *See id.*  The same way that a consumer would understand that "Grows Anywhere! Guaranteed!" is not a promise that EZ Seeds will grow in any condition, or that "drought tolerant" amounts to a guarantee that EZ Seeds will grow during a drought, consumers would understand that "non-sticky - no flakes - crazy hold" is not a guarantee that the Product will never, under any conditions, produce flakes.  Plaintiff concedes, then tries to justify, the fact that there are limited variables to when the Product might cause flaking. FAC ¶ 30 ("In dry weather, it <u>can</u> become brittle and flaky."); FAC ¶ 31 ("[PVP has a] <u>tendency</u> to become brittle and flaky in dry weather."); FAC ¶ 32 ("while the flaking may not always arise on particularly humid days …"); FAC ¶ 32 (alleging flakes may occur when inside using air conditioning).  Instead, a reasonable consumer knows that certain variables, including climate and how he or she uses the product, could impact a hair gel's performance; thus, a reasonable consumer would not expect "non-sticky - no flakes - crazy hold" to be an absolute statement of fact on which he or she could rely.

This is particularly true when viewed in the context of the whole label.  *See Time Warner Cable, Inc. v. DIRECTV, Inc.*, No. 06CIV.14245, 2007 WL 1138879, at *4 (S.D.N.Y. Apr. 16, 2007) ("In considering false advertising claims, the Court is to bear in mind that 'fundamental to

any task of interpretation is the principle that text must yield to context,' and that the Court must 'consider the advertisement[s] in [their] entirety and not engage in disputatious dissection. The entire mosaic should be viewed rather than each tile separately.'" (quoting *S.C. Johnson & Son. Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001)).  As an initial matter, the Product itself is named "Invincible," which is clearly an exaggerated description of the hair gel.  Moreover, most of the language throughout the label is editorialized and hyperbolic:

> This gel's hold is no joke! So put it down and slowly back away if you are not up for our strongest gel hold ever!

> This non-sticky, no-flake formula is powered by a high-tech styling agent - we call it Alpha XTR. Call it what you want, it lets you take your hair to new heights. Or do your own thing and cement your individual style.

> And when the party comes to an end, easily un-glue with a little shampoo.

> Go ahead - style away!

Smith Cert. Ex. A.  For purposes of his lawsuit, Plaintiff isolated the "no flakes" claim from the rest of the label to make his claim seem more plausible.  But a reasonable consumer reading the entire label—including the Product's name—would know that "non-sticky - no flakes - crazy hold," or "Invincible," like the instruction to "put [the Product] down and slowly back away" is puffery.  A reasonable consumer would discern that the statements on the label are intended to be humorous and exaggerated, rather than statements of absolute fact.  Thus, when viewing the allegedly misleading statement in the context of the entire label, the statement constitutes puffery and the Court should dismiss Plaintiff's claims for fraud and violations of the GBL.

**B.  Plaintiff Fails to Adequately Plead Injury in Support of His Claims Under New York General Business Law Sections 349 And 350 (Counts I-III)**

Regardless of a defendant's alleged conduct, a defendant's acts and omissions are not actionable under GBL sections 349 or 350 unless the conduct actually results in an injury to the plaintiff who is bringing the action.  *See generally Frank v. DaimlerChrysler Corp.*, 292 A.D.2d 118, 121, 741 N.Y.S.2d 9, 12-13 (1st Dept. 2002).  Allegedly deceptive acts cannot *also* serve as the alleged injury—instead, an adequate and independent factual allegation of harm to the plaintiff is necessary to state a viable claim for relief under the GBL.  *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56, 698 N.Y.S.2d 615, 620-21 (1999) (in affirming dismissal of GBL § 349 claim,[3] holding that "proof that a 'material deceptive act or practice *caused actual, although not necessarily pecuniary, harm*' is required to impose compensatory damages") (emphasis in original).  "[C]onsumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have not suffered an injury cognizable under NYGBL § 349 [and 350]." *Rodriguez v. It's Just Lunch, Int'l*, No. 07CIV9227(SHS)(KNF), 2010 WL 685009, at *9 (S.D.N.Y. Feb. 23, 2010); *see also DaCorta v. AM Retail Grp., Inc.*, No. 16-CV-01748 (NSR), 2018 WL 557909, at *7 (S.D.N.Y. Jan. 23, 2018) ("Simply alleging that a plaintiff 'would not have purchased' the product but for the deceptive practices, is, alone insufficient.").  Instead, courts in the Second Circuit look for an injury apart from the purchase of the product itself, such as a legitimate allegation that the misrepresentation allowed the defendant to charge a premium for the product.  *See DaCorta*, 2018 WL 557909, at *8 (collecting cases).

However, a plaintiff must plead plausible facts to support a price premium theory of injury.  *See, e.g. id.*, at *9 (stating that the "Plaintiff's apparent belief that simply alleging the word

---

[3]  The *Small* plaintiff did not challenge the dismissal of her GBL § 350 claim on appeal.  *Small*, 94 N.Y.2d at 56 n.3, 698 N.Y.S.2d at 621 n.3.

'premium' will suffice, is simply incorrect" and holding that the plaintiff failed to plead any connection between the alleged misrepresentation and the value of the product); *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM), 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) ("Simply because Plaintiffs here recite the word 'premium' multiple times in their Complaint does not make Plaintiffs' injury any more cognizable."); *cf. Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 68 (E.D.N.Y. 2017) (finding injury properly pleaded for GBL § 349 claim where plaintiff included in complaint a comparison to a competing product that did not make the alleged misrepresentation on the label and charged 41% less for the product).  Under GBL sections 349 and 350, the plaintiff's ascertainable loss must be non-speculative.  *Marshall v. Hyundai Motor Am.*, No. 12 CIV. 3072 (CM), 2019 WL 2678023, at *17 (S.D.N.Y. June 14, 2019).

Here, to support his claim that his purchase price of $7.99 constituted a "premium," Plaintiff compares the Product to three other hair gels.  *See* FAC ¶ 41.  However, these comparisons fail to "nudge" Plaintiff's claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  Plaintiff cannot just plead facts on information and belief or make facts up.  Plaintiff must plead plausible facts, not hyperbole or speculation.  The labels of the first two products (Clubman Pinaud and Queen Helene) do in fact claim that the products do *not* produce flakes. *See* Smith Cert. Ex. B.[4]  Moreover, both products contain PVP, which Plaintiff alleges is the very ingredient that causes the Product to flake. *Id.*  If Plaintiff PVP theory is correct, then these two

---

[4] "'[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint,' the court may nevertheless take the document into consideration . . . , without converting the proceeding to one for summary judgment." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (alteration omitted) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)).  When documents contain statements that contradict the allegations in the complaint, the court need not accept as true the allegations contained in the complaint.  *Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000).

products would simply represent two more products that contain PVP and made false "no flakes" claims.  Accordingly, these two products cannot support—and in fact, contradict—Plaintiff's price premium theory.

The third comparison product (Via Natural) is apparently so obscure that a picture of the back panel of the product's label is not readily available online.  Moreover, the company that manufactures the Via Natural line of products, Universal Beauty Products, Inc., does not even identify the alleged styling gel as one of its products.[5]  In any event, assuming Plaintiff's claim that the label does not make any representations about flaking to be true, the comparison still fails to make his price premium theory plausible: Plaintiff fails to allege a non-conclusory basis for claiming that the products are comparable, or how the "no flakes" statement commands a premium as opposed to other features of the Product.

As a result, all three products[6] fall short of adequately supporting Plaintiff's claim that the "no flakes" language on the Product's label allowed Defendant to charge a price premium.  In the absence of any other non-conclusory facts in support of his price premium theory, Plaintiff fails to plausibly allege an injury.

In addition, Plaintiff admits that some consumers purchased the product for reasons other than whether or not the product caused flakes, and thus the "no flakes" claim would not support a price premium. In trying to fix some of the pleading errors in the original Complaint, and now trying to justify the problems with some of the very reviews that Plaintiff relies upon in the FAC, Plaintiff states:

---

[5] *See https://www.universalbeauty.com/shop/VIA_NATURAL?limit=100*
[6] Moreover, the Product is six ounces whereas the three products Plaintiff compares are 16 ounces. Even though Plaintiff alleges the price per fluid ounce, a larger product may not provide a reliable comparison; therefore, the comparisons fall short of making Plaintiff's allegations sufficiently plausible.

> While not every review complains of flaking, that a product review makes no mention of flakes does not mean the Product does not cause flaking. **Some consumers may be satisfied with the Product for other reasons, such as its hold, non-sticky quality, or fragrance, which may sometimes override their concerns about flakes.**

FAC ¶ 26.  This statement undercuts Plaintiff's very theory of the case because it demonstrates that purchasers are buying the Product for reasons other than any representation about flakes.  Maybe some consumers do not care about flakes but are looking for that "invincible" and "crazy hold."  This flaw in the FAC is highlighted by reviews quoted by Plaintiff in the FAC.  One reviewer stated:

> *"Okay this glue does definitely hold. My hair is so freaking thick and grows so fast it's annoying the amount of gel's I've gone through because it doesn't hold without like four layers of the stuff. This stuff is quite amazing when it comes to hold, which is lovely. And it washes out quite easily, which is lovely. But holy crap does it flake like a mother. I know it says "doesn't flake" on the package, and that's just not true. **It flakes so much**, but as long as you don't touch you're hair, you'll be fine. **It amazing gel (glue) <u>for the price</u> and I definitely recommend it**.")  And another reviewer "Love this gel! However it does flake a lot." FAC ¶ 28.*

Plaintiff quotes another consumer comment: "**Love this gel! However it does flake a lot**. Use just a little but [sic] of a layer to avoid flaking." FAC ¶ 28. These consumers are clearly not paying a price premium for any "no flakes" representation, but are basing purchasing decisions on the "Invincible" and "crazy hold" of the Product.  These consumers have not suffered an ascertainable loss.  The complete reviews (Smith Cert. Exhibits "D" and "E") demonstrate that an even larger number of consumers are extremely happy with the Product.

### C. <u>Plaintiff's Allegation of Scienter is Insufficient to State a Claim for Common Law Fraud (Count IV)</u>

When alleging a fraud-based claim, "in conjunction with the facial plausibility standard of Rule 12(b)(6), Plaintiffs must satisfy the heightened pleading standard set forth in Rule 9(b)."

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015); *Rodrigues v. Family Justice Centers*, No. 18-CV-6999 (JPO), 2019 WL 1988526, at *6 (S.D.N.Y. May 6, 2019).  Significantly here, Rule 9(b) requires plaintiffs alleging fraud to adequately plead the defendant's mental state:  plaintiffs must allege facts that give rise to a "strong inference" of fraudulent intent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).  "[W]hile Rule 9(b) permits scienter to be demonstrated by inference, this must not be mistaken for license to base claims of fraud on speculation and conclusory allegations. An ample factual basis must be supplied to support the charges." *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991).

To plead scienter, Plaintiff relies on the theory that PVP's propensity for causing flaking is common knowledge, therefore Defendant knew that it was allegedly defrauding customers. However, this allegation is plainly insufficient to meet the heightened pleading standard of Rule 9(b).

To try to salvage his claims, Plaintiff goes further down the rabbit hole by citing competitive product literature that Plaintiff presents as coming from an independent scientific "research and development website for cosmetic chemists." FAC ¶ 34. This is false.  In reality, the article is just a chemical manufacturer, BASF, hawking a chemical that competes with PVP.  *See* Smith Cert. Exhibit C (copy of the front page of this article noting that it is authored by and sponsored by BASF).  This is hardly reliable scientific support for Plaintiff's claims.

Plaintiff also cites obscure blog posts as evidence that PVP is known to produce flakes. There are no allegations that Henkel read any of the BASF advertisements or blog posts.  What Plaintiff and the FAC lack is any plausible, non-conclusory allegation that *Defendant* is aware that PVP causes flakes and nevertheless includes misleading representations on the Product's label.

*See In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 RRM RLM, 2013 WL 4647512, at *25-26 (E.D.N.Y. Aug. 29, 2013) (dismissing claim regarding "all natural" label for failure to allege sufficient facts to support an inference of fraudulent intent where, even though independent tests confirmed the presence of GMOs in the products, plaintiff failed to adequately allege that the defendant knew the products contained GMOs); *cf. In re Welspun Litig.*, No. 16 CV 6792 (VB), 2019 WL 2174089, at *16 (S.D.N.Y. May 20, 2019) (dismissing fraud claims as "far too general to generate a strong inference of intent to defraud" even though Plaintiff pled facts showing that retailer was specifically warned about potential fraud).  In any event, the equivocal and conditional language in the passages Plaintiff cites merely suggests the possibility that hair gel containing PVP may cause flaking in certain limited circumstances. *See* FAC ¶ 30-31 (sources merely state that PVP "can" or has a "tendency" to flake and only when in dry and/or cold weather).  These sources provide no specific information about the Product or Defendant's manufacturing, testing, or marketing of the Product.  Consequently, Plaintiff's allegations are too vague and conclusory to plausibly allege scienter, and Plaintiff's claim for common law fraud should be dismissed.

**POINT 2**
**PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED**
**BECAUSE HE LACKS STANDING**

Plaintiff's claims for injunctive relief should be dismissed for lack of standing under Federal Rule of Civil Procedure 12(b)(1).  To establish standing to pursue a claim for injunctive relief, a plaintiff must adequately plead a "real or immediate threat" of injury. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983)).  If a consumer will not purchase a product in the future, he does not have standing to seek injunctive relief. *See Kommer v. Bayer Consumer Health,* 710 F. App'x 43, 44 (2d Cir. 2018) (summary order); *DaCorta v. AM Retail Grp., Inc.*, No. 16-CV-01748 (NSR), 2018

WL 557909, at *4 (S.D.N.Y. Jan. 23, 2018) (holding that the plaintiff's claim that she would not have purchased the product "but for" the alleged misrepresentation "is effectively a concession that she does not intend to purchase the product in the future"); *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM), 2016 WL 6459832, at *5 (S.D.N.Y. Oct. 26, 2016) (dismissing claims for injunctive relief in a slack-fill case where plaintiff alleges that he will not purchase the product again in its allegedly misleading packaging); *Spiro v. Healthport Techs., LLC*, 73 F. Supp. 3d 259, 270-71 (S.D.N.Y. 2014) (noting that past exposure to illegal conduct cannot sustain a plausible inference that the plaintiff is "in danger of being wronged again").

Similarly, here, Plaintiff claims that he would not have purchased the Product, or would not have purchased at the given price, but for the alleged misrepresentation on the label (FAC ¶ 7); that if he encountered the product in the future he could not rely on the truthfulness of its label absent changes (FAC ¶18); and that he would only consider purchasing the Product again if the Product was reengineered (FAC ¶ 70). Not only does Plaintiff fail to allege any "real or immediate threat" of future injury, he affirmatively pleads that he will not purchase the Product with its offending packaging again. This is not the first time that this Plaintiff and this Counsel failed to adequately plead injunctive relief in a putative consumer class action. *See Daniel v. Tootsie Roll Indus.*, LLC, No. 17 CIV. 7541 (NRB), 2018 WL 3650015, at *6 (S.D.N.Y. Aug. 1, 2018) (dismissing injunctive relief claim, as well as GBL and common law fraud claims, in slack-fill case where Abel Duran was second named Plaintiff). As in *Daniel*, Plaintiff cannot sustain a claim for injunctive relief because he fails to plausibly allege that he will purchase the Product in the future. *See also Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*, 148 F. Supp. 3d 285, 296 (S.D.N.Y. 2015) (dismissing claims for injunctive relief with prejudice where complaint lacks any allegations that plaintiff intends to purchase the product again and any amendment would be

futile because the complaint indicates that plaintiff will refrain from purchasing the product even if court issued an injunction).

Accordingly, Plaintiffs' claims for injunctive relief should be dismissed for lack of standing.  *See* FAC Counts I and III.

### POINT 3
### THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

The Complaint should be dismissed in its entirety, and the Court should not afford Plaintiff another opportunity to replead.  *See Spiro v. Healthport Techs., LLC*, 73 F. Supp. 3d 259, 271 n.8 (S.D.N.Y. 2014).  It is well established in this Circuit that the Court may deny leave to replead where an opportunity to amend would be futile.  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (holding that the "district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party"). "Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend."  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

The Court should not grant Plaintiff another opportunity to amend his complaint because Defendant's instant motion to dismiss the First Amended Complaint asserts the same arguments as its first motion to dismiss Plaintiff's original Complaint.  *See In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 549 (S.D.N.Y. 2015).  Therefore, Plaintiff has been unable to address the deficiencies in his complaint, and a further opportunity to amend is likely to be futile.  *See Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009) (summary order); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  Under these circumstances, it is appropriate for the Court to dismiss the FAC with prejudice.

**POINT 4**
**PLAINTIFF'S CLASS CLAIMS SHOULD BE STRICKEN**

Under Rule 12(f), the Court may strike from a pleading any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  Rule 23(c)(1)(A) provides that "[a]t an early practicable time…the court must determine by order whether to certify the action as a class action[,]" Fed. R. Civ. P. 23(c)(1)(A), and Rule 23(d)(1)(D) provides that "the court may issue orders that…require that the  pleadings be amended to eliminate allegations about representation of absent persons and that   the action proceed accordingly[,]" Fed. R. Civ. P. 23(d)(1)(D).   Taken together, these Rules provide the authority for this Court to strike Plaintiffs class allegations as the FAC alone demonstrates that a class cannot be certified. Granting expensive and time-consuming discovery before dismissing the class allegations will only waste judicial resources and the resources of the parties.  The Supreme Court of the United States has recognized that "[s]ometimes the issues are plain enough from the pleadings to determine whether" class certification is appropriate in a given case. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982). The Third Circuit Court of Appeals has acknowledged that in a "rare few" cases "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met" and a court may strike class allegations contained in a complaint. *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 n.30 (3d Cir. 2011) (citing *Rios v. State Farm Fire & Cas. Co.,* 469 F. Supp. 2d 727, 740 (S.D. Iowa 2007)); *Davito v. Amtrust Bank*, 743 F.Supp.2d 114, 115 (E.D.N.Y. 2010) (granting motion to strike class allegations).

Henkel does not make this Motion to Strike lightly and does so with the full understanding that courts in the Second Circuit tend to delay consideration of class claims.  However, there is no

bar to striking class claims prior to discovery or motions to certify a class,[7] and courts in other districts routinely strike class claims at an earlier juncture. *See Falcon*, 457 U.S. at 160; *Wright v. Family Dollar, Inc.*, No. 10 C 4410, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010) ("when the defendant advances a legal argument based on the pleadings, discovery is not necessary for the court to evaluate whether a class action may be maintained"); *Thompson v. Merck & Co.*, 2004 WL 62710, at *2 (E.D. Pa. Jan. 6, 2004) (rejecting argument that court may not grant motion "to strike class allegations from the complaint until after plaintiffs have filed a motion for class certification"); *Tietsworth v. Sears*, No. 720 F.Supp.2d 113, 1146 (N.D. Cal. 2010) (holding that "this Court has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained"); *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 205 n.3 (D.N.J. 2003) (motion to strike class allegations are appropriate "where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met"); *Ross-Randolph v. Allstate Ins.*, No. DKC-99-3344, 2001 WL 36042162, at *4 (D. Md. May 11, 2001) (granting motion to strike class allegations and holding that "[i]n determining whether a party complies with Rule 23, a court does not have to wait until class certification is sought").

A proposed class must satisfy several "rigorous" standards. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). In this case, the proposed classes in the FAC cannot be certified for several incurable reasons.

---

[7] *See, e.g. Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 462 (S.D.N.Y. 2013) (holding that "a party may move to strike class claims even before discovery"); *Luciano v. Eastman Kodak Co.*, No. 05-CV-6463T, 2006 WL 1455477, at *3 (W.D.N.Y. May 25, 2006) ("Although plaintiff has not yet moved for class certification in this case, a court may decide the issue of certification based on a review of the complaint prior to a party's motion to certify the proposed class."); *PFT of Am., Inc. v. Tradewell, Inc.*, No. 98 CIV. 6413 (RPP), 1999 WL 179358, at *2 (S.D.N.Y. Mar. 31, 1999) (striking class claims at the pleading stage).

### A. The Putative Class Members Do Not Have Standing

First and foremost, a "class must . . . be defined in such a way that anyone within it would have standing." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006). To achieve standing, a plaintiff must have suffered an "injury in fact" that is "distinct and palpable," the injury must be fairly traceable to the challenged action, and the injury must be likely redressable by a favorable decision. *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). A proposed class is facially "overbroad if it includes significant numbers of consumers who have not suffered any injury or harm." *Loreto v. Procter & Gamble Co.*, No. 1:09-cv-815, 2013 U.S. Dist. LEXIS 162752, at *12 (S.D. Ohio Nov. 15, 2013); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (affirming denial of class certification where the proposed class "could include millions . . . who have no grievance"). Plaintiff has drawn our attention to the Product reviews, but these reviews actually demonstrate that the proposed class cannot meet the standard explained in *Denny* because the bulk of putative class members have not been injured. *See, infra,* Statement of Facts, §A, pp. 3-4.

In this case, discovery is not needed to reveal that Plaintiff's proposed class contains members who do not have standing. Specifically, the proposed class and subclass includes *all* purchasers of the Product, but the overwhelming majority of purchasers are satisfied with the Product and have not complained about the Product's marketing or labeling. *See* Smith Cert. Exhibits "D" and "E." Moreover, a complete and accurate picture of the consumer reviews of the Product demonstrate that the majority of consumers are satisfied with the Product, received the benefit of their bargain, and have not suffered an injury. The Product's review show 4.3 out of 5 stars from a total of 704 reviews on Amazon.com, and on Walmart.com, the Product has 165

reviews and 4.5 out of 5 stars.[8]  *See Spagnola v. The Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009)

(plaintiff's receipt of adequate insurance coverage was fatal to his overpayment claim); *Sokoloff*

*v. Town Sports Int'l, Inc.*, 778 N.Y.S.2d 9, 10-11 (1st Dep't 2004) (dismissing plaintiff's claim

where he received the benefits set forth in his gym contract).

Considering the abundance of contradicting information, Plaintiff's argument that the

online reviews lend plausibility to his claims is not only uncompelling, it should be outright

rejected by this Court.  *See James L. Turkle Trust v. Wells Fargo & Co.*, 602 Fed. App'x. 360, 362

(9th Cir. 2015*); In re Vanarthos*, 445 B.R. 257, 261 (Bankr. S.D.N.Y. 2011) (holding that, "[i]n

deciding a motion to dismiss, the court may consider documents that are integral to the complaint[;]

[w]hen documents contain statements that contradict allegations in a complaint, the documents

control and the court need not accept as true the allegations in the complaint to the extent they are

contradicted"); *see also Tello v. Bank of Am. N.A.*, 2014 WL 99299, at *4 (D.Nev. Jan. 3, 2014)

(finding that the plaintiff failed to state a cognizable claim for intentional misrepresentation, where

the documents provided to the court appeared to contradict the plaintiff's allegations); *Saravia v.*

*Select Portfolio Serv., Inc.*, 2014 WL 2865798, at *7 (D.Md. June 23, 2014) ("With contradictory

---

[8] Plaintiff attached cherry-picked portions of consumer reviews to his Complaint.  The Court can, and should, consider the complete document upon which Plaintiff relies, namely all of the Amazon reviews associated with the Product.  *See Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (holding that a court may consider the facts alleged in the complaint, together with any statements or documents incorporated in it by reference, as well as documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit); *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991) (holding that a plaintiff cannot "evade a properly argued motion to dismiss simply because [the] plaintiff has chosen not to attach [a document on which he or she relies in bringing suit] to the complaint or to incorporate it by reference.").  Accordingly, we have attached a true and correct copy of the complete set of 704 Amazon reviews and 165 Walmart reviews respectively.  Smith Cert., Ex. D and E (the reviews are in date order with the specific reviews cited by Plaintiff highlighted for the Court's convenience.

factual allegations, the Court cannot find a claim with 'facial plausibility' under the standards as set forth in [*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)]." (citation omitted)).

Here, because the putative class contains hundreds of consumers—in the reviews cited by Plaintiff alone—who will have suffered no injury and thus have no standing, the Plaintiff's class claims should be stricken.

## B.  The Putative Classes Cannot Satisfy Rule 23

For similar reasons, the breadth of the class definition is also fatal to class certification on typicality, predominance, and ascertainably grounds under Rule 23.

First, the requirement for typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010).  Based on the allegations of the FAC alone, it is clear that Plaintiff's claims will not be typical.  Simply put, consumers, like Plaintiff, with complaints about the Product's labeling or even its performance, are heavily outweighed by consumers who had positive experiences with the Product.  Thus, Plaintiff's claims are not typical of the class.

Second, "to find predominance, a Court must consider the elements of each cause of action, and determine whether those elements can be satisfied by common, class-wide proof."  *Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498, 509 (S.D.N.Y. 2011).  In particular, "[c]ommon questions predominate only if plaintiffs can show that those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof."  *Id.*  In *Oscar*, the Court found that common issues did not predominate claims involving defective tires, where Plaintiff had not identified a common defect. *Id.* at 511 ("Even if the plaintiffs were to show that the Goodyear [tires] suffered from a common defect, they would still need to demonstrate that this

defect caused each class member's [tires] to puncture."). Here, Plaintiff's own theory that PVP causes flaking hinges on variables such as individual use and climate[9], thus the claims are subject to individualized proof. *See. Infra,* pp. 3-4.

In the FAC, Plaintiff claims that online consumer reviews demonstrate that "Plaintiff's experiences with the Product are hardly unique to him."  FAC ¶ 25.  But the FAC, and even considering only the cherry-picked reviews cited by Plaintiff, demonstrates that Plaintiff does not have issues in common with the putative class, let alone common issues that would predominate over voluminous uncommon facts.

Moreover, Plaintiff cannot establish predominance because, even assuming Plaintiff has suffered some injury, most putative class members have not.  Where "the majority of the putative class members have no legally recognizable claim, the action necessarily metastasizes into millions of individual claims," which "is fatal to a showing of predominance of common questions." *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 603 (S.D.N.Y. 1982) (finding, in a putative class action for breach of the implied warranty of merchantability based on a purported defect in tires, that the majority of putative class members had not experienced a defect).  As a result, Plaintiff's class claims should be stricken because individual issues will predominate.

Finally, Rule 23 contains an implied requirement of ascertainability. *See In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 30, 44 (2d Cir. 2006).  For a class to be ascertainable, the class definition must be based on "objective criteria," and it must be "administratively feasible" to identify class members without conducting "a mini-hearing on the merits of each case." *Charron*

---

[9] "Clearly, a product which relies on PVP for its styling properties is likely to yield varying results depending upon local climate and individual handling of the hair once the film is dry." Tonya Mckay Becker, White, Flaky Hair Gel and Other Misadventures, NaturallyCurly.com, Feb. 3, 2001, https://www.naturallycurly.com/curlreading/products-ingredients/white-flaky-hair-gel-and-other-misadventures (cited by Plaintiff at FAC ¶30, n.10).

*v. Pinnacle Grp. N.Y. L.L.C.*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010) (internal quotation marks and citation omitted).  That standard will be impossible to satisfy here, where (1) there is no way to identify the Product purchasers; (2) only a small minority of consumers will allege that they did not receive the benefit of their bargain, and (3) locating aggrieved class members will require the Court to conduct mini-hearings on consumers' use of the Product.

For the reasons set forth above, it is apparent at this stage of the case that Plaintiff's class claims will not survive class certification.  In the interests of efficiency, the Court should strike the class claims now to the extent any claims survive Henkel's Motion to Dismiss.

## **CONCLUSION**

Henkel respectfully requests that all of the claims in the FAC be dismissed with prejudice. In the alternative, the Plaintiff's class claims should be stricken.

Dated: New York, New York

July 26, 2019

GREENBERG TRAURIG, LLP

By: */s/ Keith E. Smith*
 Keith E. Smith
 Jaclyn DeMais
 200 Park Avenue
 New York, New York 10166
 (212) 801-9200
 smithkei@gtlaw.com
 demaisj@gtlaw.com

 *Attorneys for Defendant,*
 *Henkel Corporation.*