**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ABEL DURAN,
*on behalf of himself and all others similarly situated*,

               Case No.: 1:19-cv-02794-PAE

        Plaintiff,

     v.

HENKEL CORPORATION,

        Defendant.

---

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND TO
STRIKE THE CLASS CLAIMS**

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Second Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiff and the Class*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION .............................................................................................................. 1

ARGUMENT ..................................................................................................................... 2

I.   PLAINTIFF HAS ADEQUATELY PLED CLAIMS UNDER NY GBL §§ 349–50 ........ 2

    A. Defendant's "no flakes" Misrepresentation Is Not Mere Puffery ............................. 4

    B. Plaintiff Has Adequately Pled Injury ......................................................................... 8

II.   PLAINTIFF PLAUSIBLY ALLEGES FRAUDULENT INTENT .............................. 13

III.   PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF ............................ 15

IV.   DEFENDANT'S MOTION TO STRIKE THE CLASS ALLEGATIONS SHOULD BE
    REJECTED IN ITS ENTIRETY ..................................................................................... 17

    A. Defendant's Motion to Strike Cannot Satisfy the High Standard Required by Courts
      in This Circuit……………………………………………………………………… ...... 17

    B. Plaintiff's Allegations Satisfy the Requirements for Class Certification.................. 18

# TABLE OF AUTHORITIES

Cases

*Ackerman v. Coca-Cola Co.*,
    2013 U.S. Dist. LEXIS 184232, 2013 WL 7044866 (E.D.N.Y. 2013) .................................... 15

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937 (2009) ..................................................................................... 2

*Belfiore v. Procter & Gamble Co.*,
    F. Supp. 3d 440 (E.D.N.Y. 2014) ........................................................................................... 15

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................. 2

*Bellissimo v. Rana USA LLC*,
    No. 16-cv-03720 (RA) (BCM), 2017 U.S. Dist. LEXIS 105400 (S.D.N.Y. 2017) ................. 17

*Bowring v. Sapporo U.S.A., Inc.*
    234 F. Supp. 3d 386 (E.D.N.Y. 2017) ...................................................................................... 3

*Chen-Oster v. Goldman, Sachs & Co.*,
    877 F. Supp. 2d 113 (S.D.N.Y. 2012) ................................................................................. 2, 18

*Daniel v. Mondelez Int'l, Inc.*,
    287 F. Supp. 3d 177 (E.D.N.Y. 2018) ......................................................................... 10, 12, 19

*Delgado v. Ocwen Loan Servicing Company, LLC*,
    2014 U.S. Dist. LEXIS 135758, 2014 WL 4773991 (E.D.N.Y. 2014) .................................... 15

*Ebin v. Kangadis Food Inc.*,
    No. 13-CV-2311, 2013 U.S. Dist. LEXIS 174174, 2013 WL 6504547 (S.D.N.Y. 2013) .......... 8

*Fortyune v. American Multi-Cinema, Inc.*,
    2002 U.S. Dist. LEXIS 27960, 2002 WL 32985838 (C.D. Cal. 2002) .................................... 17

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
    8 F. Supp. 3d 467 (S.D.N.Y. 2014) ........................................................................................ 10

*Green v. Gerber Prods. Co.*,
    262 F. Supp. 3d 38 (E.D.N.Y. 2017) ........................................................................................ 8

*Henderson v. Gruma Corp.*,
    2011 U.S. Dist. LEXIS 41077, 2011 WL 1362188 (C.D. Cal. 2011) ..................................... 16

*In re Scotts EZ Seed Litig.*,
    No. 12-cv-4727-VB, 2013 U.S. Dist. LEXIS 73808 (S.D.N.Y. 2013) ...................... 5, 6, 7, 21

*Kacocha v. Nestle Purina Petcare Co.*,
    No. 15-cv-5489-KMK, 2016 U.S. Dist. LEXIS 107097 (S.D.N.Y. 2016) ................................ 9

ii

*Koehler v. Litehouse, Inc.*,
  2012 U.S. Dist. LEXIS 176971, 2012 WL 6217635 (N.D. Cal. 2012)..................................... 16

*Koenig v. Boulder Brands, Inc.*,
  995 F. Supp. 2d 274 (S.D.N.Y. 2014) ...................................................................................... 8

*Lazaroff v. Paraco Gas Corp.*,
  38 Misc. 3d 1217[A], 967 N.Y.S.2d 867, 2011 NY Slip OP 52541[U] (N.Y. Sup. Ct. 2011) ... 9

*Manier v. L'Oreal U.S.A., Inc.*,
  No. 1:17-cv-00111-JSR, 2017 U.S. Dist. LEXIS 1161139 (S.D.N.Y. 2017) ..................... 4, 6, 7

*Maurizio v. Goldsmith*
  230 F.3d 518, 521 (2d Cir. 2000) ............................................................................................ 3

*Mullins v. Direct Dig., LLC*,
  795 F.3d 654, 672 (7th Cir. 2015) .......................................................................................... 22

*O'Brien v. Nat'l Prop. Analysts Partners*,
  936 F.2d 674 (2d Cir. 1991) .................................................................................................... 15

*Orlander v. Staples, Inc.*,
  802 F.3d 289, 300 (2d Cir. 2015) ............................................................................................ 3

*Oscar v. BMW of N. Am., LLC*,
  274 F.R.D. 498 (S.D.N.Y. 2011).............................................................................................. 21

*Quiroz v. Beaverton Foods*,
  17-CV-7348-NGG-JO, 2019 U.S. Dist. LEXIS 57313 (E.D.N.Y. 2019) ................................ 13

*Raines v. Byrd*,
  521 U.S. 811 (1997) ................................................................................................................ 16

*Ries v. Arizona Bevs. USA LLC*,
  287 F.R.D. 523 (N.D. Cal. 2012) ....................................................................................... 16, 22

*Serrano v. Cablevision Sys. Corp.*
  863 F. Supp. 2d 157, 167 (E.D.N.Y. 2012)............................................................................... 6

*Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*,
  832 F. Supp. 2d 194, 209 (E.D.N.Y. 2010).............................................................................. 4

*Small v. Lorillard Tobacco Co.*,
  94 N.Y.2d 43 (1999) ................................................................................................................ 9

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
  2015 U.S. Dist. LEXIS 126880, 2015 WL 5579872 (E.D.N.Y. 2015)..................................... 11

*Suarez v. Cal. Nat. Living, Inc.*,
  2019 U.S. Dist. LEXIS 34634 (S.D.N.Y. 2019) ....................................................................... 3

*Winfield v. Citibank, N.A.*,
  842 F. Supp. 2s 560, 573 (2012) ............................................................................................ 18

*Yuzwak v. Dygert*,
  144 A.D.2d 938, 534 N.Y.S. 2d 35 (4th Dep't 1988) ................................................................. 4


**Statutes**

NY GBL § 349 .................................................................................................................... passim

NY GBL § 350 .................................................................................................................... passim


**Rules**

Fed. R. Civ. P. 9(b) ....................................................................................................... 13, 15

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 2

Fed. R. Civ. P 12(f) .............................................................................................................. 17

Fed. R. Civ. P. 23(c)(1)(A) ................................................................................................... 17

Fed. R. Civ. P. 23(d)(1)(D) ................................................................................................... 17

## INTRODUCTION

Plaintiff ABEL DURAN ("Plaintiff DURAN," or "Plaintiff") hereby respectfully submits this Memorandum of Law in Opposition to Defendant's HENKEL CORPORATION ("Defendant HENKEL," or "Defendant") Motion to Dismiss the Amended Complaint. On March 28, 2018, Plaintiffs brought a Class Action Complaint seeking redress for, and a stop to, Defendants' unfair and deceptive business practices regarding the advertising, marketing, and sale of its Schwarzkopf got2b ultra glued invincible STYLING GEL (the "Product"). On July 3, 2019, Plaintiff filed an Amended Complaint ("Am. Compl."). On July 27, 2019, Defendants served its Motion to Dismiss the Amended Complaint ("Def. Mem."), which Plaintiff here opposes.

In reasonable reliance on Defendant's front-label representation that the Product produces "no flakes," Plaintiff purchased the Product for personal use as a hair styling gel. *See* Am. Compl. **Exhibit A** (displaying the Product's front-label packaging). Despite this representation, Plaintiff later found that the Product did in fact cause flaking after he applied the Product to his hair consistently with the Product's back-label instructions. The Product produces flakes because it contains the ingredient poly N-vinyl-2-pyrrolidone ("PVP"), a chemical compound that has a tendency to cause flaking. *See* Am. Compl. **Exhibit C** (displaying the Product's ingredients statement).

Had Plaintiff known that the Product produces flakes, despite its unequivocal "no flakes" front label representation, he would not have purchased it, or he would have paid significantly less for it to reflect this inferior quality. Plaintiff therefore suffered injury in fact and lost money as a result of Defendant's deceptive business practices, as described more fully herein. After learning that the Product causes flaking to occur, Plaintiff ceased applying the Product to his hair. Should Plaintiff encounter the Product in the future, he could not rely on the truthfulness of Defendant's

"no flakes" representation, absent corrective changes to the Product's labeling or its ingredients.

To prevail on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff need only assert factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff's claim for relief must be "plausible on its face," *id.* at 570, and a complaint fails if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557). However, "[t]he plausibility standard [on a motion to dismiss] is not akin to a probability requirement." *Iqbal*, 129 S. Ct. at 1937. A plaintiff must only "nudge" his or her allegations "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 548.

Defendant's motion to strike Plaintiff's class allegations should also be rejected in its entirety, as courts in this Circuit routinely hold that such motions are "procedurally premature" on a motion to dismiss. *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012). To the extent that this Court evaluates the merits of Defendant's arguments relating to purported deficiencies in Plaintiff's class allegations regarding standing, typicality, predominance, and ascertainability, it should nonetheless find that each of these arguments raised by Defendant are unavailing, since they, as a whole, fail to respond to Plaintiff's central allegation that he and the Class are entitled to damages under a price premium theory of injury resulting from their purchase of Defendant's deceptively labeled Product.

## **ARGUMENT**

## I.  **PLAINTIFF HAS ADEQUATELY PLED CLAIMS UNDER NY GBL §§ 349–50**

To establish a prima facie claim under GBL § 349 or § 350, a plaintiff must plausibly allege "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading

in a material way, and (3) the plaintiff has been injured as a result." *Suarez v. Cal. Nat. Living, Inc.*, 2019 U.S. Dist. LEXIS 34634 *1, *17 (S.D.N.Y. Mar. 4, 2019) (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)). A defendant's conduct is materially misleading if it "would mislead 'a reasonable consumer acting reasonably under the circumstances.'" *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 390 (E.D.N.Y. 2017) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)). The determination as to whether conduct is materially misleading is an "objective inquiry" that is "typically unsuited to resolution at the pleading stage." *Suarez*, 2019 U.S. Dist. LEXIS 34634 at *17 (citing *Bowring*, 234 F. Supp 3d at 390).

Defendant does not contest the first element of Plaintiff's claims brought under GBL §§ 349–50—*i.e.*, whether Defendant's deceptive acts were directed at consumers. Defendant, however, argues that Plaintiff has failed to satisfy the second and third elements of GBL §§ 349–50 claims regarding the materially misleading nature of its "no flakes" representation, as well as the economic injury to Plaintiff and the Class resulting from their purchase of the deceptively labeled Product.

Defendant's arguments are unavailing for the simple fact that any reasonable consumer would be misled into believing that a hair styling gel which unequivocally states "no flakes" on its front label would not actually produce flakes—or at least that it would not have the general tendency to produce flakes. Yet the Product does, in fact, generally cause flaking to occur, despite its straightforward "no flakes" representation. Furthermore, given the value that consumers attach to non-flaking hair gels, the value of the Product as delivered by Defendant is significantly less than the value of the Product as warranted by its "no flakes" claim. Plaintiff and the Class therefore suffered economic injury after they reasonably relied on Defendant's materially misleading "no flakes" claim and, on that basis, decided to purchase the Product.

### A.  Defendant's "no flakes" Misrepresentation Is Not Mere Puffery

Defendant argues that the Product's "no flakes" representation constitutes puffery, particularly "when viewed in the context of the entire label." Def. Mem. at 9. Yet Plaintiff notes that, as an initial matter, the determination of whether a statement amounts to puffery is rarely adjudicated on a motion to dismiss: "when a statement is not obviously puffing, the question of whether it is fact or opinion is 'almost always a question of fact for a jury's resolution.'" *Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832 F. Supp. 2d 194, 209 (E.D.N.Y. 2010) (quoting *Yuzwak v. Dygert*, 144 A.D.2d 938, 939, 534 N.Y.S.2d 35, 36 (4th Dep't 1988)). For the reasons set forth below, Defendant's "no flakes" representation is not obvious puffery; accordingly, this matter should be left for the jury.

Defendant's "no flakes" representation is not obviously puffery because it is a specific, factual claim that can be readily verified. There is also nothing exaggerated or outlandish about the promise that a hair gel will not produce flakes. *See Manier v. L'Oreal U.S.A., Inc.*, No. 1:17-cv-00111-JSR, 2017 U.S. Dist. LEXIS 1161139 at *25 (S.D.N.Y. July 18, 2017) ("Puffery . . . generally refers to the expression of an exaggerated opinion—as opposed to a factual misrepresentation . . . .") (internal quotation marks and citation omitted). To test the veracity of Defendant's "no flakes" representation, a consumer need only apply the Product consistently with its back label instructions, wait for it to dry, and then observe whether any subsequent flaking occurs. Plaintiff's allegations indicate that he has already verified first-hand that the "no flakes" representation is false: "[o]n the day of purchase, Plaintiff showered, dried his hair, and applied two (2) drops of the Product to his hair . . . . After the gel had dried, Plaintiff noticed that the gel had produced white and grayish flakes . . . ." Am. Compl. ¶ 22. The consumer reviews included in **Exhibit B** of the Amended Complaint provide additional credible evidence that

Defendant's "no flakes" representation is demonstrably false, as those reviews also detail consumers' direct experience with the Product's tendency to produce flakes. *See In re Scotts EZ Seed Litig.*, No. 12-cv-4727-VB, 2013 U.S. Dist. LEXIS 73808, at *20 (S.D.N.Y. May 22, 2013) (holding that statements on a product's labeling which represent to consumers that it "will perform in specific, measurable ways" are not mere puffery).

Defendant's "no flakes" representation is also actionable because there is nothing outlandish or exaggerated about a hair gel product's unambiguous representation that it will not flake. To the contrary, this is precisely the type of attribute that a consumer may reasonably consider when deciding to purchase one hair gel over another. It is thus hardly outlandish for Defendant to include a "no flakes" representation on its Product's label. Furthermore, Defendant's argument that a reasonable consumer would interpret the "no flakes" representation as an exaggeration is also undermined by the fact that many consumers have already written reviews expressing their frustration with the Product's tendency to flake. *See* Am. Compl. **Exhibit B**. The very existence of these consumer reviews demonstrates that the "no flakes" representation does not constitute puffery, since consumers would not be wasting their time by going online to critique puffery.

Defendant attempts to illustrate the nature of puffery with a number of examples drawn from various cases. However, the contrast between these examples and Defendant's "no flakes" representation only makes Plaintiff's case for him. Defendant notes that the court in *In re Scotts EZ Seed Litig.* deemed the following representations to be puffery as a matter of law because of their vague or exaggerated nature: "WaterSmart," "Drought tolerant," "Grows Anywhere! Guaranteed," "Makes the Most of Every Drop," and "Grows in Tough Conditions! Guaranteed!" 2013 U.S. Dist. LEXIS 73808, at *19. However, nothing about Defendant's "no flakes"

representation is analogous to these examples of puffery. Unlike with Defendant's claim, it is in no way apparent how one can even go about testing the veracity of representations such as "WaterSmart" and "Makes the Most of Every Drop." Regarding the statements "Drought tolerant" and "Grows in Tough Conditions! Guaranteed!," the terms "tolerant" and "Tough" are inherently vague such that they do not readily lend themselves to empirical verification. Defendant also cites *Serrano v. Cablevision Sys. Corp.* for the proposition that statements like "blazing fast speed," and "lightning-fast Internet access" constitute puffery because of their similarly exaggerated nature. Def. Mem. at 9 (citing 863 F. Supp. 2d 157, 167 (E.D.N.Y. 2012)). Yet as discussed above, Defendant's "no flakes" representation is in no way difficult to verify first-hand—nor is it vague or outlandish. Therefore, Defendant's reliance on *Scotts EZ Seed* and *Serrano* to support its puffery defense is misguided.

Indeed, as this Court held in *Manier v. L'Oreal U.S.A., Inc.*, statements referring to the "smoothing" aspects of a hair product were actionable non-puffery because they "conjure[] a specific, factual idea about the Hair Treatment's effects in the mind of a typical consumer." No. 1:17-cv-00111-JSR, 2017 U.S. Dist. LEXIS 1161139 at *28–29 (S.D.N.Y. July 18, 2017) (internal quotation marks and citation omitted). The term "smoothing" is patently more vague than Defendant's "no flakes" representation. That is, consumers are likely to reasonably disagree about the degree to which a product must have a smoothing effect before it may warrant such a representation on it label. By contrast, the "no" quantifier in Defendant's representation unambiguously communicates to every consumer that the product will not produce *any* flakes— or at the very least, that the Product does not have the *generally tendency* to flake. Yet the Product has just this tendency, despite its "no flakes" representation. This Court should therefore conclude that the "no flakes" claim is an actionable misrepresentation, since it conjures "in the

mind of the typical consumer" a still more concrete and "specific, factual idea about the [Product's] effects" than the "smoothing" claim at issue in *Manier v. L'Oreal*.

Defendant desperately argues that its "no flakes" representation, which standing on its own is unambiguously non-puffery, is somehow transmogrified into puffery by virtue of its proximity to the genuine puffery on the Product's label. *See* Def. Mem. at 9–10. This principle is utterly untenable. Many labels contain a mix of puffery and non-puffery, and businesses cannot be permitted to insulate themselves from liability for making false factual statements by simply introducing puffery to a product's label. Reasonable consumers can distinguish between puffery and non-puffery, and do not evaluate labels holistically as uniformly puffery or non-puffery.

Even the case on which Defendant primarily relies for its puffery analysis, *Scotts EZ Seed Litig.*, impliedly refutes Defendant's argument. Although the *Scotts EZ Seed* court held that the *majority* of the product's representations were puffery as a matter of law, the court nonetheless went on to parse other statements *on the same product label* as actionable. The representations "grows 50% thicker with half the water compared to ordinary seed," and "EZ Seed is developed to thrive in virtually every condition," unlike "WaterSmart" and "Drought tolerant," were actionable non-puffery because they "promise that EZ Seed will perform in specific, measurable ways." No. 12-cv-4727-VB, 2013 U.S. Dist. LEXIS 73808, at *20 (S.D.N.Y. May 22, 2013) Similarly, no amount of contextualization or reference to the exaggerated or hyperbolic statements on the Product's label (*e.g.*, "Invincible styling gel," and "This gel's hold is no joke!") can insulate Defendant from liability for also including the unambiguous, verifiably false "no flakes" representation on the same label. Therefore, Defendant's "no flakes" claim is not mere puffery, but rather an actionable misrepresentation under §§ NY GBL 349–50.

### B.  Plaintiff Has Adequately Pled Injury

Plaintiff DURAN has pled injury under NY GBL §§ 349–50. Plaintiff specifically alleged the following in connection with Plaintiff and the Class' economic injury resulting from their purchase of the Product:

> Plaintiff DURAN and Class members were [] injured when they paid the full price of the Product and received something inferior to what was warranted to them by Defendant. Am. Compl. ¶ 39.

> Plaintiff DURAN and Class members were deprived of the benefit of their bargains. Am. Compl. ¶ 40.

> Defendant has deceived Plaintiff DURAN and other consumers nationwide by misbranding their Product, inducing Plaintiff DURAN and Class members to reasonably rely on their misrepresentation, and purchase a product that they would not have purchased, or would not have purchased at the given price, had they known the truth. Am. Compl. ¶ 7.

> Plaintiff DURAN purchased the Product for the premium price of $7.99. The label promised that the Product produces "no flakes" when it in fact does just this. Had Plaintiff DURAN known that the Product produces flakes, he would not have considered it a "no flakes" hair product and would not have purchased it, or would only have been willing to pay significantly less for it. Plaintiff DURAN thus lost money and suffered injury-in-fact as a result of Defendant's misleading, fraudulent, and deceptive practices. Am. Compl. . ¶ 17.

These injury pleadings are completely consistent with those which New York court have deemed sufficient to survive a motion to dismiss. *See Green v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 68 (E.D.N.Y. 2017) (observing that the plaintiff's "allegations [we]re sufficient to state an injury under GBL sections 349 and 350 because they claim[ed] that [] plaintiff paid a premium for a product based on defendant's inaccurate representations") (internal quotation marks omitted); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288–89 (S.D.N.Y. 2014) (finding a sufficiently-pled section 349 injury where the plaintiff alleged that he would not have paid the price charged for "fat-free" milk had he known it contained fat); *Ebin v. Kangadis Food Inc.*, No. 13-CV-2311, 2013 U.S. Dist. LEXIS 174174, 2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013)

(deeming the plaintiff's allegations sufficient to state a claim under GBL 349 where "[t]he deception is the false and misleading label, and the injury is the purchase price"); *Lazaroff v. Paraco Gas Corp.*, 38 Misc. 3d 1217[A], 967 N.Y.S.2d 867, 2011 NY Slip OP 52541[U] (N.Y. Sup. Ct. 2011) (finding a sufficiently-pled section 349 injury where the plaintiff alleged that he would not have paid the price charged for a "[twenty] pound" propane cylinder had he known it contained only fifteen pounds of propane); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-cv-5489-KMK, 2016 U.S. Dist. LEXIS 107097, at *51–52 (S.D.N.Y. Aug. 11, 2016) ("Plaintiff seeks monetary damages on the grounds that he 'would not have paid the premium price he paid' to buy the Products had he 'known the truth.' (Compl. ¶ 9.) Case law makes clear that this is sufficient at the motion-to-dismiss phase for a § 349 claim to survive.").

Defendant nonetheless claims that Plaintiff asserts a "deception as injury" theory, arguing that "[a]llegedly deceptive acts cannot *also* serve as the alleged injury—instead, an adequate and independent factual allegation of harm to the plaintiff is necessary to state a viable claim for relief under the GBL." Def. Mem. at 11 (citing *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999)). However, Defendant's argument fundamentally misunderstands *Small v. Lorillard Tobacco Co*., which simply held that deception *alone* does not constitute an injury. There, plaintiffs alleged that "defendants used deceptive commercial practices to sell their cigarettes to New Yorkers and that they would not have bought these cigarettes had they known that nicotine is an addictive drug." *Id.* at 51. However, the only injury alleged was "that defendants' deception prevented them from making free and informed choices as consumers." *Id*. at 56. This is manifestly not Plaintiff's argument in the instant action. Plaintiff's injury is not that Defendant prevented him from making the free and informed choice of whether to purchase the Product, but rather that the actual value of his purchase was less than the value as warranted by Defendant's

representations. Defendant promised Plaintiff a "no flake" hair gel, but in fact merely delivered a hair gel which has the tendency to cause flaking to occur, which is substantially less valuable than a hair gel that causes flaking by virtue of its inherent chemical tendencies. That is why Plaintiff was financially injured. The injury was not to his free will, but rather his wallet.

Defendant takes issue with the comparison products Plaintiff discusses at ¶ 41 of the Amended Complaint. Defendant argues that the first two comparison products, Clubman Pinaud and Queen Helene, undermine Plaintiff's price premium theory because they, like the Product, each contain PVP—the chemical compound that is well-known for its tendency to cause flaking—while also making "no flakes" representations. *See* Def. Mem. at 12–13. This argument fails for two crucial reasons. First, questions about the adequacy of Plaintiff's comparison products are not dispositive on a motion to dismiss, given that a plaintiff is not even required to adduce comparison products to plead injury under NY GBL §§ 349–50. *See, e.g.*, *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 198 n.19 (E.D.N.Y. 2018) ("Courts routinely allow complaints that lack allegations of both cheaper and exactly comparable products to survive motions to dismiss."); *see also Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 481–82 (S.D.N.Y. 2014) (explaining that courts "have found valid [section] 349 claims despite plaintiffs not identifying competitors or prices" and that "while identifying the prices of competing products in the [c]omplaint would strengthen [the p]laintiff's allegation of injury," the allegations are not necessary to state a claim).

Second, the two comparison products Defendant objects to are in fact adequate for assessing Plaintiff and the Class' measure of damages. The Clubman Pinaud and Queen Helene hair gels *only* contain "no flakes" representations on their *back* labels. *See* Smith Cert. Ex. B. By contrast, the Product unambiguously and prominently touts its "no flakes" quality on the

Product's *front* label. The fact that Defendant uniquely makes this representation on the Product's front label is why Defendant is able to command a price premium for the Product. That is, a reasonable consumer is much more likely to be attracted to, and ultimately purchase, a hair gel product which contains a prominent "no flakes" representation on its front labeling, which will have a much more pronounced effect on the Product's perceived value than could inconspicuously small print on the back label. Thus, it can hardly be said that the Clubman Pinaud and Queen Helene hair gels are able to command a price premium in the same manner as the Product, as the Product uniquely entices consumers with a "no flakes" representation on its front labeling. The "no flakes" statements on all three products are equally false, but it does not follow that they therefore have the same effect on the price consumers are willing to pay. *See Stoltz v. Fage Dairy Processing Indus., S.A.*, 2015 U.S. Dist. LEXIS 126880, 2015 WL 5579872, at *22 (E.D.N.Y. Sept. 22, 2015) (finding a sufficiently-pled section 349 injury where the plaintiffs alleged that "through the deceptive practice of marketing and selling their products . . . [the defendants] have been able to command a premium price by deceiving consumers about the attributes of their yogurts and distinguishing themselves from similar products").

As to the third comparison product, Via Natural, Defendant simply downplays its relevance on the basis of what Defendant argues is its relative obscurity online. *See* Def. Mem. at 13. Whether the Product is obscure cannot be decided on a motion to dismiss. Even if it is obscure, Defendant does not explain how this relative obscurity undermines its probative value. Like Defendant's Product, Via Natural's labeling represents that it has a "maximum hold" as a hair gel (whereas Defendant's Product states "invincible styling gel" and "crazy hold"). Yet unlike Defendant's Product, Via Natural commands a lower price premium because it does not

additionally make a "no flakes" representation, as the reasonable consumer naturally places a higher value on a hair gel which does not have the tendency to flake.

Whatever further issues Defendant may have regarding the adequacy of Plaintiff's comparison products, they are neither here nor there on a motion to dismiss. As noted above, Plaintiff is not even required to provide comparison products to adequately plead injury under NY GBL §§ 349–50. In addition, determining the exact diminution in value from the Product's purchase price to reflect its inferior flaking quality is an issue requiring expert testimony, and therefore cannot be resolved on a motion to dismiss.

Defendant nonetheless argues that the "no flakes" claim does not support a price premium theory because "Plaintiff admits that some consumers purchased the product for reasons other than whether or not the product caused flakes." Def. Mem. at 13. However, the Amended Complaint did no more than acknowledge that Defendant's "no flakes" representation may not be the *only* reason consumers were attracted to the Product. It does not follow that this representation was a matter of indifference to reasonable consumers, or that reasonable consumers were not financially injured by Defendant's failure to deliver a Product which could actually deliver on its "no flakes" representation. Hence, any reference Defendant makes to overall customer satisfaction with the Product is by itself unavailing, since it does nothing to undermine Plaintiff's allegations concerning the Product's lesser value resulting from its inferior flaking qualities.

Defendant's argument is directly at odds with the price premium theory of injury itself, which is premised on the assumption that most deceptively marketed goods retain some genuine value for consumers, even if it is less than what the deceptive marketing had led them to believe. As the *Daniel v. Mondelez Int'l* court observed: ""[i]n most price premium cases, the alleged

misrepresentation conveys to consumers that the product at issue contains a unique, desirable quality. . . . [which should] be observable through an increased price in comparison to products without the desirable quality." 287 F. Supp. 3d 177, 195–96 (E.D.N.Y. 2018). Taken to its logical extreme, Defendant's reasoning would dictate that a plaintiff could never recover damages for a deceptively labeled product whenever she derives any benefit from it. For example, under Defendant's view, a consumer who purchased a particular type of mustard after specifically relying upon a false "No Preservatives" claim on its label would be entirely barred from recovering damages if she enjoyed the overall taste of the product. Yet this is a patently absurd argument, since it would furnish businesses with an open license to make all manner of false representations on their labels in the knowledge that they were immune from liability so long as the Product offered anything of value. Indeed, such a false "No Preservatives" claim is, like Defendant's false "no flakes" claim, precisely the type of misrepresentation that is actionable under NY GBL §§ 349–50, and the measure of damages may be properly determined under a price premium theory of injury at trial—just as Plaintiff has alleged throughout the Amended Complaint. *See Quiroz v. Beaverton Foods*, 17-CV-7348-NGG-JO, 2019 U.S. Dist. LEXIS 57313 (E.D.N.Y. Mar. 31, 2019).

## II. PLAINTIFF PLAUSIBLY ALLEGES FRAUDULENT INTENT

Defendant argues that Plaintiff's allegations that Defendant was aware of the common knowledge that PVP has a propensity to cause flaking and therefore knew that its "no flakes" representation was false is "plainly insufficient to meet the heightened pleading standard of Rule 9(b)." Def. Mem. at 15. Defendant also charges that what Plaintiff and the Amended Complaint "lack is any plausible, non-conclusory allegation that *Defendant* is aware that PVP causes flakes and nevertheless includes misleading representations on the Product's label." *Id.*

However, Plaintiff's allegations do give rise to a strong inference that Defendant acted with knowledge that its "no flakes" representation is false. Although Defendant seeks to discredit the sources Plaintiff relies upon when describing PVP's characteristics, none of Defendant's arguments undermines Plaintiff's claim that since PVP was introduced in the 1950s, it has been well recognized for its tendency to cause flaking when used in hair styling polymers. *See* Am. Compl. ¶¶ 30–31 (describing cosmetic chemist and pharmacy professor's observations that PVP has a tendency to become brittle and flaky); Am. Compl. ¶ 34 (describing how PVP, first introduced in the 1950s, causes significantly more flaking to occur than modern hair styling polymers).

It is against this background that Plaintiff claims that Defendant was aware that its "no flakes" representation is false. While Defendant argues that the Amended Complaint nonetheless fails to allege that Defendant, in particular, was made aware of any of the above sources discussing PVP's properties (thus preventing Plaintiff from concluding that Defendant knew that its "no flakes" representation was false), such an argument is unpersuasive. As Plaintiff previously alleged, "Defendant employs cosmetic scientists who are familiar with the basic properties of PVP—including its propensity to cause flaking—and know that other ingredients are more capable of delivering on Defendant's 'no flakes' promises." Am. Compl. ¶ 43. That is, even if Plaintiff did not expressly state that Defendant's cosmetic scientists were directly exposed to the specific sources Plaintiff cites, it nonetheless remains true that PVP was first introduced as a hair styling polymer nearly seventy years ago, and it is a well-known feature of this historic chemical compound that it has the tendency to cause flaking. It is reasonable to conclude that, on this basis, Defendant's cosmetic scientists were, and continue to be, familiar with this basic fact regarding PVP—not least of all because PVP is a primary ingredient in the

Product. *See* Am. Compl. **Exhibit C** (demonstrating that PVP is the third most prominent ingredient in the Product). And because Defendant's cosmetic scientists are reasonably presumed to have known and discussed PVP's basic properties with Defendant, Defendant is itself reasonably presumed to have known that the Product would flake, yet nonetheless decided to market the Product with the false "no flakes" representation. *See O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) ("Rule 9(b) permits scienter to be demonstrated by inference"). Plaintiff has thus adequately alleged Defendant's fraudulent intent in connection with the manufacturing and sale of the Product.

### III. PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF

Defendant argues that Plaintiff lacks standing to pursue injunctive relief because there is no indication that Plaintiff intends to purchase the Product again, and so Plaintiff is unlikely to suffer any future injury. Def. Mem. at 16–17. However, this argument ignores that "an injunction in connection with a class action is designed to afford protection of future consumers from the same fraud. It does this by permitting the plaintiff to sue on their behalf." *Belfiore v. Procter & Gamble Co.*, F. Supp. 3d 440, 445 (E.D.N.Y. 2014). To hold otherwise "denigrate[s] the New York consumer protection statute, designed as a major support of consumers who claim to have been cheated." *Id. See Delgado v. Ocwen Loan Servicing Company, LLC*, 2014 U.S. Dist. LEXIS 135758, 2014 WL 4773991, at *42 (E.D.N.Y. Sept. 23, 2014) ("Finding that Plaintiffs have no federal standing to enjoin a deceptive practice once they become aware of the scheme would eviscerate the intent of the California legislature in creating consumer protection statutes.") (internal quotation marks and citation omitted); *Ackerman v. Coca-Cola Co.*, 2013 U.S. Dist. LEXIS 184232, 2013 WL 7044866, at *56 n.23 (E.D.N.Y. July 17, 2013) ("[C]ourts have consistently held that plaintiffs have standing to seek injunctive relief based on the allegation that

a product's labeling or marketing is misleading to a reasonable consumer. To hold otherwise would 'effectively bar any consumer who avoids the offending product from seeking injunctive relief.'") (quoting *Koehler v. Litehouse, Inc.*, 2012 U.S. Dist. LEXIS 176971, 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012)).

Some have argued that the policy considerations behind state consumer protection laws must yield to the Constitution. But there is no conflict between the two. The Supreme Court has held that "[t]he standing inquiry focuses on whether the plaintiff is the proper party to bring this suit." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). This formulation thus presupposes that the proper party *exists*: the reference is to *the* proper party, whomever that happens to be, not to *a* proper party, who might or might not exist. This is consistent with the reasoning of courts that have held injunctive relief to be appropriate in consumer fraud class actions. Given the specific issue intrinsic to these cases—that anyone who becomes aware of the deception and so is positioned to bring a complaint is unlikely to be duped again—the usual application of the standing rule must be adjusted accordingly if there is ever to be a proper party, which *Raines* indicates there must be. *See Ries v. Arizona Bevs. USA LLC*, 287 F.R.D. 523, 533–34 (N.D. Cal. 2012) ("As plaintiffs further note, were the Court to accept the suggestion that plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction, then injunctive relief would never be available in false advertising cases, a wholly unrealistic result."); *Henderson v. Gruma Corp.*, 2011 U.S. Dist. LEXIS 41077, 2011 WL 1362188 at *7 (C.D. Cal. Apr. 11, 2011) ("If the Court were to construe Article III standing for FAL and UCL claims as narrowly as the Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer protection laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter ('once bitten, twice shy') and would never have Article III

standing."); *Fortyune v. American Multi-Cinema, Inc.*, 2002 U.S. Dist. LEXIS 27960, 2002 WL 32985838, *7 (C.D. Cal. Oct. 22, 2002) ("If this Court rules otherwise [and does not find standing], like defendants would always be able to avoid enforcement of the ADA. This court is reluctant to embrace a rule of standing that would allow an alleged wrongdoer to evade the court's jurisdiction so long as he does not injure the same person twice.").

In the consumer fraud context, the proper party to request injunctive relief is the party that already has standing to request other forms of relief arising out of the same case or controversy. This is the best conceivable party given the very nature of the cause of action and the public interest. Article III does not require more than this. The alternative is a state of affairs in which those who need and are entitled to injunctive relief are unable to act on that right while those who have the knowledge to do so are legally disqualified from doing so.

## IV.   DEFENDANT'S MOTION TO STRIKE THE CLASS ALLEGATIONS SHOULD BE REJECTED IN ITS ENTIRETY

Defendant's motion to strike Plaintiff's class allegations pursuant to Federal Rules of Civil Procedure 12(f), 23(c)(1)(A), and 23(d)(1)(D) should be denied on the grounds that courts in this Circuit overwhelmingly reject such motions at the motion-to-dismiss stage because they are procedurally premature. In the alternative, this Court should deny Defendant's motion to strike because Plaintiff's allegations satisfy the standing, typicality, predominance, and ascertainability requirements for maintaining a class action against Defendant.

### A. Defendant's Motion to Strike Cannot Satisfy the High Standard Required by Courts in the Second Circuit

Defendant's motion to strike, whatever its merits or lack thereof, should not be adjudicated prior to the parties' conducting discovery, since Defendant cannot show that no amount of discovery would permit Plaintiff to certify a class. *See, e.g.*, *Bellissimo v. Rana USA*

*LLC*, No. 16-cv-03720 (RA) (BCM), 2017 U.S. Dist. LEXIS 105400, at *28–29 (S.D.N.Y. July 6, 2017) ("Here, defendants propose that the Court rule now, based solely on the pleadings, that plaintiffs cannot possibly satisfy three of the four Rule 23(a) factors (all save numerosity) and that no proposed class in this action ever be certified under Rule 23(b)(2). Courts in this Circuit overwhelmingly reject such motions."); *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (denying motion to strike class claims as "procedurally premature"); *Winfield v. Citibank, N.A.*, 842 F. Supp. 2s 560, 573 (2012) (collecting cases) ("[D]istrict courts in this Circuit have frequently found that a determination of whether the Rule 23 requirements are met is more properly deferred to the class certification stage, where a more complete factual record can aid the court.").

As Defendant itself acknowledges, "courts in the Second Circuit tend to delay consideration of class claims" until after the motion-to-dismiss stage. Def. Mem. at 19. This Court should thus adhere to the above Second Circuit precedent and reject Defendant's motion to strike Plaintiff's class allegations at this time.

### B.  Plaintiff's Allegations Satisfy the Requirements for Class Certification

To the extent that the Court nonetheless evaluates the merits of Defendant's motion to strike, it should find that Plaintiff's allegations are sufficient for maintaining a class action against Defendant. Defendant argues that other Class members lack standing to bring claims, and that Plaintiff will be unable to satisfy the requirements for typicality, predominance, and ascertainability on a motion for class certification. *See* Def. Mem. at 21–25. However, each of Defendant's arguments is unavailing.

Defendant's arguments as to standing, typicality, and predominance all boil down to the tired refrain that other Class members have not suffered injury. The crux of Defendant's

argument is that the Product reviews which Plaintiff cites in **Exhibit B** of the Amended Complaint cannot be used as a basis for injury, since the product review websites from which they were drawn illustrate that consumers have an overall satisfaction with the Product. Def. Mem. at 21–22.

This argument has already been soundly refuted by Plaintiff above. Once again, Defendant's argument directly conflicts with the price premium theory of injury, which expressly allows a plaintiff to recover the diminution in economic value of a deceptively labeled product. *See Daniel v. Mondelez Int'l.*, 287 F. Supp. 3d at 177, 195–96 (E.D.N.Y. 2018). Defendant's repeated emphasis on overall consumer satisfaction with the Product utterly fails to address the fact that consumers have specifically voiced their frustration with the Product's flaking qualities in particular, as they reasonably believed that the Product would deliver on its specific and easily verifiable "no flakes" representation. To reiterate, the possibility that other Class members have derived some value from the Product does not mean they have not been injured.

Defendant next argues that Plaintiff's claims cannot be typical of the putative class because "consumers, like Plaintiff, with complaints about the Product's labeling or even its performance, are heavily outweighed by consumers who had positive experiences with the Product." Def. Mem. at 23. This argument provides just another instance where Defendant's emphasis on overall consumer satisfaction is unresponsive to the substance of Plaintiff's allegations. As discussed above, Defendant's "no flakes" representation is a specific, factual claim that can be easily verified by simply following the Product's instructions for use, and waiting for the gel to subsequently dry. Plaintiff followed these instructions, yet found that the Product nonetheless causes flaking.

19

The consumer reviews included in **Exhibit B** of the Amended Complaint indicate that Plaintiff's experience with flaking is far from unique. It would also be false to suggest, as Defendant attempts to do, that these reviews are somehow isolated occurrences among all purchasers of the Product. The Product contains PVP, which has a known tendency to produce flakes. Consequently, it is accurate to allege, as Plaintiff does, that the Class should contemplate all purchasers of the Product, as they are prone to experience flaking even after properly applying the Product. Again, any remarks concerning overall consumer satisfaction does nothing to undermine the force of these allegations which specifically pertain to the Product's uncontroverted tendency to flake. Plaintiff's allegations, which solely concern the Product's flaking qualities, are thus typical of all purchasers of the Product. Moreover, Defendant's argument that consumers are overall satisfied with the Product should be taken with a sizable grain of salt. Defendant's case entirely rests on some consumer review pages for the Product. But consumer review pages of products are notoriously unreliable, given a business' natural interest in stuffing them with favorable reviews to increase their product's attractiveness to consumers. Indeed, the consumer review page evaluation website, Fakespot.com, flags the Amazon.com webpage cited by Defendant as highly unreliable. *See* Declaration of C.K. Lee, Ex. A. The same review generated by Fakespot.com regarding the Amazon.com webpage presenting consumer reviews of Defendant's Product also gave the Amazon webpage a "D" regarding its accuracy of consumers reviews, stated that only 34.5% of the reviews were reliable, and that "high deception" is involved in those Amazon.com consumer reviews. *See id.*

Defendant argues that Plaintiff cannot satisfy the predominance requirement to maintain a class action because Plaintiff's "own theory that PVP causes flaking hinges on variables such as individual use and climate, thus the claims are subject to individualized proof." Def. Mem. at

24. This argument is a red herring, as Plaintiff's central allegation remains unaffected: the Product has the general tendency to produce flakes even when applied consistently with the Product's instructions. The possibility of certain exceptional conditions, like humidity, under which the Product might not cause flaking, does not undermine this general point. *See* Am. Compl. ¶ 32 ("While the flaking may not always arise on particularly humid days, it will on most days . . . ."); *id.* ¶ 33 ("Moreover, most consumers in the United States use air conditioners when the weather is humid. Thus, the flakes materialize when consumers are inside . . . ."). There is thus hardly anything unique about Plaintiff's experience with the Product. The Product's tendency to Produce flakes, which naturally flows from the inclusion of PVP as a main ingredient in the Product, is a common defect which predominates the Class of all purchasers of the Product. For this reason, Defendant's reliance on *Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498 (S.D.N.Y. 2011) is misplaced, since unlike the plaintiff in that case who could not identify a common defect among allegedly defective run-flat tires, Plaintiff DURAN has adequately alleged a common defect in the instant action—namely, the Product's tendency to flake even after being properly applied by the average American consumer.

Lastly, Defendant argues that Plaintiff's allegations cannot satisfy the implied requirement of ascertainability on three purported basis: (1) because of the difficulty associated with identifying the Product purchasers; (2) only a minority of consumer will allege that they did not receive the benefit of their bargain in purchasing the Product; and (3) locating aggrieved Class members will require administratively unfeasible hearings to gauge each consumers particular use of the Product. Def. Mem. at 24–25. Addressing these in order, Defendant is simply incorrect to suggest that the administrative difficulty associated with identifying class members is dispositive on the issue of ascertainability. As the *Scotts EZ Seed* court observed,

"[d]eclining to certify classes when consumers are likely to lack proof of purchase would render class actions against producers almost impossible to bring." 304 F.R.D. 397, 407 (S.D.N.Y. 2015). *See also Ries v. Arizona Bevs. USA LLC*, 287 F.R.D. 523, 535 (N.D. Cal. 2012) ("[T]here would be no such thing as a consumer class action" if the absence of consumer receipts defeated ascertainability); *Mullins v. Direct Dig., LLC*, 795 F.3d 654, 672 (7th Cir. 2015) ("[C]ourts should not decline certification merely because the plaintiff's proposed method for identifying class members relies on affidavits").

Defendant's second and third arguments essentially recycle Defendant's argument regarding standing and typicality in that they each focus on overall consumer satisfaction with the Product. Therefore, these arguments need only be cursorily addressed once more. The fact that consumers are satisfied overall with the Product does not speak to Plaintiff's central allegation that it has a tendency to produce flakes notwithstanding its deceptive front label "no flakes" representation. Because the Product has the tendency to flake for all purchasers of the Product, Plaintiff and the Class are, as whole, entitled to damages under a price premium theory of injury. Consequently, there is no need for this Court to concern itself with any subset of purchasers of the Product in deciding whether to certify the Class.

For all the foregoing reasons, Defendant's Motion to Dismiss and to Strike the Class Claims is meritless and should be denied.

Dated: August 9, 2019

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**

*/s/ C.K. Lee*
By:  C.K. Lee, Esq.

C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

23

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2019, true and correct copies of Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiffs' Class Action Complaint and to Strike the Class Claims were served on counsel of record via ECF.

*/s/ C.K. Lee*
C.K. Lee, Esq.