UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABEL DURAN,<br>*On behalf of himself and all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>HENKEL CORPORATION,<br><br>Defendants. | 19-CV-02794 (PAE)<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
AND/OR TO STRIKE THE CLASS CLAIMS**

Keith E. Smith
Jaclyn DeMais
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York 10166
(212) 801-9200
(212) 801-6400 (fax)

*Attorneys for Defendant,
Henkel Corporation*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT ..............................................................................................................................2

    I.      When Viewed in Context, "No Flakes" is Clearly Puffery and Not Misleading to a Reasonable Consumer, Which This Court Can Decide on a Motion to Dismiss ...........................................................................................................................2

          A.      The Court Can Decide on a Motion to Dismiss that the Product is not Misleading ................................................................................................................2

          B.      Plaintiff's Claim that "No Flakes" is Materially Misleading is Not Plausible .................................................................................................................2

    II.     Plaintiff's Price Premium Theory is Not Plausible .........................................................5

    III.    Plaintiff's Allegations of Fraudulent Intent are Too Speculative to Meet the Heightened Pleading Standard for Fraud-Based Claims ................................................7

    IV.    Plaintiff's Public Policy Argument in Support of his Injunctive Relief Claims Has Been Rejected by this Court ......................................................................................8

    V.     Consumers' Overwhelming Satisfaction with the Product Demonstrates that the Class Claims Should be Stricken Because the Class Contains Putative Members without Article III Standing, and that Class Treatment of Plaintiff's Claims Improper ..............................................................................................................9

CONCLUSION .........................................................................................................................10

# TABLE OF AUTHORITIES
Page(s)

**Cases**

*Ackerman v. Coca–Cola Co.*,
  2013 WL 7044866 (E.D.N.Y. July 18, 2013)..................................................................8

*Albert v. Blue Diamond Growers*,
  151 F. Supp. 3d 412 (S.D.N.Y. 2015)...........................................................................8

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
  671 F.3d 140 (2d Cir. 2011)..........................................................................................3

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................2, 4

*Belfiore v. Procter & Gamble, Co.*,
  94 F. Supp. 3d 440 (E.D.N.Y. 2015) ............................................................................8

*Briehl v. Gen. Motors Corp.*,
  172 F.3d 623 (8th Cir. 1999) ........................................................................................9

*Charron v. Pinnacle Grp. N.Y. L.L.C.*,
  269 F.R.D. 221 (S.D.N.Y. 2010) ................................................................................10

*Daniel v. Mondelez Int'l, Inc.*,
  287 F. Supp. 3d 177 (E.D.N.Y. 2018) ..........................................................................6

*Delgado v. Ocwen Loan Servicing, LLC*,
  2014 WL 4773991 (E.D.N.Y. Sept. 24, 2014) .............................................................8

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006)........................................................................................10

*Excevarria v. Dr Pepper Snapple Grp., Inc.*,
  764 F. App'x 108 (2d Cir. 2019) ..................................................................................2

*Feinstein v. Firestone Tire & Rubber Co.*,
  535 F. Supp. 595 (S.D.N.Y. 1982) .............................................................................10

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013).....................................................................................2, 4

*Fogel v. Vega*,
  759 F. App'x 18 (2d Cir. 2018) ................................................................................2, 3

*Geffner v. Coca-Cola Co.*,
   928 F.3d 198 (2d Cir. 2019) ................................................................................................4

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
   8 F. Supp. 3d 467 (S.D.N.Y. 2014) ...................................................................................6, 7

*Jessani v. Monini North America, Inc.*,
   744 F. App'x 18 (2d Cir. 2018) ........................................................................................2, 3

*Jordan v. Forfeiture Support Assocs.*,
   928 F. Supp. 2d 588 (E.D.N.Y. 2013) ..................................................................................3

*Koehler v. Litehouse, Inc.*,
   2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) ......................................................................8

*L-7 Designs, Inc. v. Old Navy, LLC*,
   647 F.3d 419 (2d Cir. 2011) .................................................................................................3

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006) .................................................................................................7

*Manier v. L'Oreal U.S.A., Inc.*,
   U.S. Dist. LEXIS 116139 (S.D.N.Y. July 17, 2017) ............................................................5

*Marino v. Coach, Inc.*,
   264 F. Supp. 3d 558 (S.D.N.Y. 2017) ..................................................................................8

*O'Brien v. Nat'l Prop. Analysts Partners*,
   936 F.2d 674 (2d Cir. 1991) .................................................................................................8

*Oshana v. Coca-Cola Co.*,
   472 F.3d 506 (7th Cir. 2006) ..............................................................................................10

*United States ex rel. Piacentile v. Amgen, Inc.*,
   336 F. Supp. 3d 119 (E.D.N.Y. 2018) ..................................................................................8

*Rivera v. Wyeth-Ayerst Labs.*,
   283 F.3d 315 (5th Cir. 2002) ................................................................................................9

*In re Scotts EZ Seed Litigation*,
   2013 WL 2303727 (S.D.N.Y. May 22, 2013) ......................................................................5

*Small v. Lorillard Tobacco Co.*,
   94 N.Y.2d 43 (1999) .............................................................................................................7

Defendant Henkel Corporation ("Henkel") submits this Reply Memorandum of Law in further support of its motion to dismiss with prejudice the First Amended Complaint (the "FAC") pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure and/or to strike Plaintiff's class claims pursuant to Rules 12(f) and 23(b)(3) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

By attaching online consumer reviews and comparing other hair gels, Plaintiff acknowledges that he must plead sufficient factual matter to make his claim—that the phrase "no flakes" was materially misleading and commanded a price premium—plausible. But Plaintiff's attempts to satisfy the standard for a well-pleaded complaint fall short. First, Plaintiff relies on consumer reviews in the FAC, but then he claims that they are unreliable after Henkel points out that the reviews demonstrate that his class claims are untenable. Next, Plaintiff doubled down on one product comparison after Henkel pointed out that the other two gels actually contradict his claims. But Plaintiff failed to properly investigate his claims, as the third gel also claims to not flake, further contradicting his claim that "no flakes" commands a premium. Finally, Plaintiff resorts to conclusory and unsupported arguments to save the FAC—like isolating "no flakes" from the rest of the label and trying to convince the Court that context does not matter.

Plaintiff again resorts to speculation and implausible allegations in support of his claim that Henkel had the fraudulent intent required to state a claim for common law fraud. And, his reliance on public policy to save his injunctive relief claims misses the mark, because this Court has already considered and rejected Plaintiff's argument. In any event, Plaintiffs' class claims should be stricken because members of the putative class do not have standing, and the claims require resolution of individual issues that make class treatment improper.

**ARGUMENT**

I. **When Viewed in Context, "No Flakes" is Clearly Puffery and Not Misleading to a Reasonable Consumer, Which This Court Can Decide on a Motion to Dismiss**

Plaintiff argues that his claims under New York's General Business Law ("GBL") survive Henkel's motion because (1) whether the Product's label is misleading is a question for the jury and (2) the Product's label is materially misleading and not merely puffery. Both arguments fail.

A. **The Court Can Decide on a Motion to Dismiss that the Product is not Misleading**

The Second Circuit has established that "a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). Courts routinely dismiss claims based on puffery or that are not materially misleading in the pleading stage. *See, e.g.*, *Excevarria v. Dr Pepper Snapple Grp., Inc.*, 764 F. App'x 108 (2d Cir. 2019) (summary order) (affirming dismissal because "Plaintiffs cannot raise a plausible inference" that product name "is false or misleading"); *Fogel v. Vega*, 759 F. App'x 18, 24 (2d Cir. 2018) (summary order) (affirming dismissal where "Plaintiff has not alleged factual circumstances that would lift" the statements "above the level of mere puffery").[1] Thus, there is no barrier to this Court deciding, as a matter of law, that Plaintiff's claims should be dismissed because the Product's label is mere puffery, and not materially misleading.

B. **Plaintiff's Claim that "No Flakes" is Materially Misleading is Not Plausible**

As a general matter, a court deciding a motion to dismiss looks for *plausible* allegations, and a complaint cannot be based on conclusory, unsupported, or overly speculative claims.[2] Thus,

---

[1] *See also Jessani v. Monini North America, Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (summary order) (rejecting same argument Plaintiff makes here).
[2] Rule 8 might not require detailed factual allegations, but it "demand[s] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* (internal quotation marks and citations omitted). This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In considering a "facial attack" of a complaint, the court "draw[s] all facts—which we assume to be true *unless contradicted by more specific allegations or documentary evidence*—from the complaint and from the exhibits attached thereto." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (emphasis added) (discrediting conclusory allegations contradicted by document attached to complaint and holding that additional facts needed to "nudge" plaintiff's "alleged injury from one that is conceivable to one that is plausible"); *see also L-7 Designs, Inc. v. Old Navy*, LLC, 647 F.3d 419, 422 (2d Cir. 2011). Thus, even on a motion to dismiss under Rule 12(b)(6), allegations are not presumed to be true when the plaintiff brings contrary evidence to the Court's attention.[3]

With this standard in mind, a plaintiff alleging a material misrepresentation "must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers. Plaintiffs must plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Jessani*, 744 F.

---

[3] *See also Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 603 (E.D.N.Y. 2013) ("Although the court must assume the truth of all well-pleaded, nonconclusory factual allegations in the complaint when considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court need not do so in the face of contrary documentation representing plaintiff's own claims, signed and dated by plaintiff.").

3

App'x at 19.  Thus, not only *can* this Court decide that the Product's label is not misleading on a motion to dismiss, it should: as explained below, Plaintiff fails to meet his burden of pleading plausible facts showing that consumers, acting reasonably in the circumstances, could be misled.

First, Plaintiff relies on consumer reviews to support his claim that "a significant portion of the general consuming public" find "no flakes" to be materially misleading.[4]  But Plaintiff directly contradicts this alleged factual support by arguing that "consumer review pages of products are notoriously unreliable."  Opp. Br. at 20. Plaintiff even attaches a consumer review evaluation website that suggests the reviews Plaintiff relied on in the FAC are unreliable.  C.K. Lee Declaration, Ex. A. Thus, the Court should reject Plaintiff's allegations that the consumer reviews support his claims. When stripped of the reviews, Plaintiff's claim is "unadorned" under *Iqbal* and lacking facts necessary to show it is plausible, and not simply speculative, that consumers acting reasonably in the circumstances would be misled by "no flakes."

Second, Plaintiff urges the Court to view the "no flakes" claim in isolation and to ignore the context provided by the label as a whole, which directly contravenes Second Circuit law. Recently, in *Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200 (2d Cir. 2019), the court stated: "As we have previously observed, 'in determining whether a reasonable consumer would have been misled by a particular advertisement, context is **crucial**.'" (emphasis added) (quoting *Fink*, 714 F.3d at 742).  Context is especially crucial in this case, because the hyperbolic language throughout the label sets the "circumstance" for the reasonable consumer.  *See Fink*, 714 F.3d at 741 (statement must be "likely to mislead a reasonable consumer acting reasonably under the circumstances").

---

[4] Specifically, Plaintiff argues that "[t]he very existence of these consumer reviews demonstrates that the 'no flakes' representation does not constitute puffery, since consumers would not be wasting their time by going online to critique puffery," Opp. Br. at 5, and that the consumer reviews "provide additional credible evidence that Defendant's 'no flakes' representation is demonstrably false," *id.* at 4-5.

4

Despite Plaintiff's suggestion, the facts of *Manier v. L'Oreal U.S.A., Inc.*, U.S. Dist. LEXIS 116139 (S.D.N.Y. July 17, 2017), and *In re Scotts EZ Seed Litigation*, 2013 WL 2303727 (S.D.N.Y. May 22, 2013), do not support his claims.  Instead, they reaffirm that this Court should consider all of the claims on the Product's label together. *See Manier*, U.S. Dist. LEXIS 116139, at *26 ("When determining whether a given statement is mere puffery, courts consider the context in which the statement was made.").  In particular, both cases involved labels containing several credible representations that were intended, when read together, to bolster the products' claims of specific, measurable results and induce a consumer to purchase the products.[5]

Here, the Product's label has the opposite effect: rather than reinforcing any notion that it is making specific claims or guarantees, the humorous language throughout the label illustrates that "no flakes" is mere puffery.  Unlike *Manier* and *EZ Seed*, the Product does not plausibly urge the consumer to treat its hyperbolic label as literal or rely on specific promises. Plaintiff's argument that "no flakes" can be readily verified and is therefore not puffery hinges on isolating the phrase, ignoring the well-established principle that statements must be viewed in context.  This Court should therefore dismiss Plaintiff's claims under the GBL and for common law fraud because Plaintiff failed to allege plausible facts supporting his claim that "no flakes" is not mere puffery.

## II.     Plaintiff's Price Premium Theory is Not Plausible

As Plaintiff notes in his Opposition, "[i]n most cases, 'price premium' should thus be observable through an increased price in comparison to products without the desirable quality."

---

[5] In *Manier*, the Court concluded that, when "taken together," the various claims on the label and the overall marketing could plausibly be misunderstood as warranting that the product "was a gentler, less caustic form of hair relaxer" when it in fact caused "excruciatingly painful scalp irritation" and hair loss.  *Id.* at *9, *27-28.  EZ Seed's label includes a graphic purporting to illustrate its superior performance, and includes language such as "50% THICKER WITH HALF THE WATER" compared to "ordinary seed." 2013 WL 2303727, at *1. Thus, EZ Seed's label suggests proven results that could constitute express warranties. *Id.* at * 7.

5

*Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, at 196 (E.D.N.Y. 2018). Accordingly, Plaintiff tried to support his price premium theory by identifying three products without no-flaking claims that are cheaper than the Product. FAC ¶ 41. Henkel pointed out that two of these products actually did contain no-flaking claims, contradicting Plaintiff's theory. Smith Cert. Ex. B. Nevertheless, Plaintiff argued in a conclusory fashion that the third product "commands a lower price premium because it does not additionally make a 'no flakes' representation, as the reasonable consumer naturally places a higher value on a hair gel which does not have the tendency to flake." Opp. Br. at 11-12. However, the third comparison product does in fact contain a "no flakes" claim (and contains PVP) as well[6] – again contradicting Plaintiff's claims and confirming that Plaintiff is not entitled to an inference that "no flakes" commands a price premium.

In defense of his comparisons, Plaintiff's alleges that Henkel can command a premium because the "no flakes" claim is on the front of the label as opposed to the back. This allegation is entirely unsupported, conclusory, and implausible. Moreover, Plaintiff offers no plausible basis for attributing the alleged price premium to "no flakes" as opposed to any of the other claims on the Product's label.[7] As Plaintiff has no other sustainable theory of damages, if Henkel did not charge a premium based on "no flakes," then Plaintiff and the putative class have no claims.

While some courts do not require that a complaint compare products to adequately allege a price premium theory[8], it is indisputable that a plaintiff must allege sufficient facts and state a

---

[6] *See* Smith Reply Cert., Ex. 1.
[7] *See* Smith Cert. Ex. A (Product's label also claims the following attributes: (1) "invincible"; (2) "non-sticky"; (3) "crazy hold"; (4) "our strongest gel hold ever" (5) "high-tech styling agent" called "Alpha XTR"; (6) "easily un-glue with a little shampoo").
[8] *See, e.g.*, *Daniel*, 287 F. Supp. 3d at 198 n.19; *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 481–82 (S.D.N.Y. 2014) (noting that, although "identifying the prices of competing products in the Complaint would strengthen Plaintiff's allegation of injury . . ., the failure to do so is not fatal").

6

plausible claim. In *Goldemberg*, for example, the Court found it plausible and not fatally speculative that products made exclusively from natural ingredients could command a price premium. 8 F. Supp. 3d at 481. In this case, however, the only factual allegations in support of Plaintiff's price premium theory is its facially inadequate comparison to three other products and reliance on allegedly unreliable consumer reviews.[9]

It is much more speculative that "no flakes," as compared to an "all natural" claim, led to a premium. After all, regardless of the consumer experience, the product either was or was not all-natural. In contrast, Plaintiff only alleges that the Product "had a tendency" to flake under specific circumstances. Accordingly, Plaintiff has failed to present the Court with a plausible, non-speculative price premium theory based on the "no flakes" phrase.

### III. Plaintiff's Allegations of Fraudulent Intent are Too Speculative to Meet the Heightened Pleading Standard for Fraud-Based Claims

Rule 9(b) requires plaintiffs alleging fraud to state facts that give rise to a "strong inference" of fraudulent intent. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). Plaintiff alleges that Henkel employs cosmetic scientists and that those scientists are familiar with PVP. Assuming that Henkel employs cosmetic scientists and that Plaintiff's theory about PVP is true, Plaintiff next asks the Court to "presume" that these cosmetic scientists discussed the alleged negative attributes of PVP with Henkel. Opp. Br. at 15. This allegation is simply too speculative

---

[9] Plaintiff also misconstrues the import of *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999). To the extent Plaintiff argues two theories of injury, (1) that he and the class purchased a product they would not have otherwise purchased and (2) that they paid a premium for the product, *see* FAC ¶ 7, 17, *Small* prohibits the first. *See Goldemberg*, 8 F. Supp. 3d at 480–81 (explaining that, in *Small*, "the New York Court of Appeals has rejected the idea that consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under [GBL] § 349"). Thus, Plaintiff's entitlement to relief depends entirely on his price premium theory, which as explained above, is inadequately pled.

to meet Plaintiff's pleading requirements. *See O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) (explaining that claims of fraud cannot be based on speculation and "[a]n ample factual basis must be supplied to support the charges")[10]. Accordingly, Plaintiff has failed to establish that his speculative allegations of fraudulent intent are sufficiently pled.

### IV. Plaintiff's Public Policy Argument in Support of his Injunctive Relief Claims Has Been Rejected by this Court

Plaintiff argues that he should be permitted to assert his injunctive relief claims—even though he expressly pleads his intention to never purchase the Product again and therefore is unlikely to suffer a future injury—for public policy reasons. Plaintiff essentially argues that if he cannot maintain his class action, injunctive relief will never be available to plaintiffs. However, courts in this District have already rejected this argument.[11] In *Albert v. Blue Diamond Growers*, 151 F. Supp. 3d 412, 418, n.4 (S.D.N.Y. 2015), this Court declined to follow the very cases cited by Plaintiff[12] as "not well-settled" and "because binding Supreme Court and Second Circuit precedent dictates otherwise. For a plaintiff to have individual standing to seek injunctive relief, he or she

---

[10] *See also*, *United States ex rel. Piacentile v. Amgen, Inc.*, 336 F. Supp. 3d 119, 131 (E.D.N.Y. 2018) ("[A] plaintiff alleging fraud on information and belief must have sufficient data to justify interposing an allegation on the subject and the complaint must adduce specific facts supporting a strong inference of fraud." (internal quotation marks and citations omitted)).

[11] *Marino v. Coach, Inc.*, 264 F. Supp. 3d 558, 566 (S.D.N.Y. 2017) ("However well intentioned [*Belfiore* and *Henderson*], they appear to confuse whether a plaintiff has Article III standing to sue in federal court with whether the purposes of the state law would be furthered by permitting plaintiffs to seek injunctive relief. To the extent seeking injunctive relief is important to Plaintiffs to protect other would-be bargain seekers, they are free to pursue their claim in state court. For that reason, it is simply not true that a holding that plaintiffs lack standing to seek injunctive relief in federal court "eviscerates" the injunctive relief provisions of state law. Injunctive relief remains available to similarly situated plaintiffs in state court" (internal citations omitted)).

[12] *Belfiore v. Procter & Gamble, Co.*, 94 F. Supp. 3d 440 (E.D.N.Y. 2015); *Delgado v. Ocwen Loan Servicing, LLC*, 2014 WL 4773991, at *14 (E.D.N.Y. Sept. 24, 2014); *Ackerman v. Coca–Cola Co.*, 2013 WL 7044866 (E.D.N.Y. July 18, 2013). *Marino* rejected *Koehler v. Litehouse, Inc.*, 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012), also cited by Plaintiff, calling its proposition "simply not true." 264 F. Supp. 3d at 566.

must demonstrate a likelihood of future injury." Accordingly, under this Court's precedent, Plaintiff's lack of Article III standing to assert claims for injunctive relief cannot be saved by a rejected public policy argument.

V. **Consumers' Overwhelming Satisfaction with the Product Demonstrates that Class Claims Should be Stricken Because the Class Contains Putative Members without Article III Standing, and that Class Treatment of Plaintiff's Claims Is Improper**

Plaintiff contends that Henkel's arguments in support of its motion to strike class claims "all boil down to the tired refrain that other Class members have not suffered injury." Opp. Br. at 18. However, Plaintiff fails to grasp why the nature of his allegations make class certification impossible. Plaintiff claims that Henkel's position would mean that "a plaintiff could never recover damages for a deceptively labeled product whenever she derives any benefit from it." Opp. Br. at 13. To illustrate his point, Plaintiff argues that "a consumer who purchased a particular type of mustard after specifically relying upon a false 'No Preservatives' claim on its label would be entirely barred from recovering damages if she enjoyed the overall taste of the product." *Id.* However, regardless of whether a consumer cared about the preservatives in Plaintiff's hypothetical mustard, all purchasers still received a product that failed to perform as advertised: they bought a product that claimed to have no preservatives but they received a product that did contain preservatives. By contrast, here, consumers bought a product whose label stated "no flakes" and the vast majority did not experience any flaking. *See, e.g.*, *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 316 (5th Cir. 2002) (dismissing putative class action where prescription drug caused injuries to some consumers, but not the plaintiffs); *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 628 (8th Cir. 1999) ("Where, as in this case, a product performs satisfactorily and never exhibits an alleged defect, no cause of action lies."). Accordingly, Plaintiff's class claims should be stricken because the class is broadly defined to contain purchasers who suffered no injury from

9

the Product. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (affirming denial of class certification where proposed class "could include millions . . . who have no grievance").[13]

Plaintiff's class cannot be simply redefined in a way that makes it better-suited for class treatment. The existence of a variety of consumers with a variety of different experiences with the Product defeats class certification. This is most clearly demonstrated through the predominance and implied ascertainability elements under Rule 23.[14] Unlike the "no preservatives" example where every consumer received a product that contained preservatives, the majority of consumers here received a hair gel that they were satisfied with and did not produce flakes. Therefore, individual issues will predominate and, in order to certify a class that only contains consumers that have Article III standing, the Court will have to conduct minitrials to determine whether each putative class member experienced flaking and, therefore, paid too much for the Product. Accordingly, the Court should strike Plaintiff's class claims now.

## CONCLUSION

Henkel respectfully requests that all of the claims in the FAC be dismissed with prejudice[15]. In the alternative, the Plaintiff's class claims should be stricken.

---

[13]*Cf. Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) (class claims survived because class was limited to include only persons who suffered injury from challenged conduct, which would be redressed if plaintiffs prevail).

[14] *See Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 603 (S.D.N.Y. 1982) (where "majority of the putative class members have no legally recognizable claim, the action necessarily metastasizes into millions of individual claims," which "is fatal to a showing of predominance"); *Charron v. Pinnacle Grp. N.Y. L.L.C.*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010) (to be ascertainable, class definition must be based on "objective criteria," and it must be "administratively feasible" to identify members without "a mini-hearing on the merits of each case").

[15] Plaintiff does not assert in his Opposition Brief that he is entitled to replead in the event this Court dismisses the FAC.

| | |
|---|---|
| Dated: August 23, 2019<br>New York, New York | GREENBERG TRAURIG, LLP<br><br>By: */s/ Keith E. Smith*<br>Keith E. Smith<br>Jaclyn DeMais<br>200 Park Avenue<br>New York, New York 10166<br>(212) 801-9200<br>smithkei@gtlaw.com<br>demaisj@gtlaw.com<br><br>*Attorneys for Defendant,*<br>*Henkel Corporation* |